GABRIEL M. RAMSEY (STATE BAR NO. 209218)
gramsey@orrick.com
JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone:    +1-415-773-5700
Facsimile:    +1-415-773-5759

MICHAEL C. TU (STATE BAR NO. 186793)
mtu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone:    +1-213-629-2020
Facsimile:    +1-213-612-2433

Attorneys for Plaintiffs
OOO Brunswick Rail Management and
Brunswick Rail Group Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OOO BRUNSWICK RAIL MANAGEMENT, a Russian limited liability company, and BRUNSWICK RAIL GROUP LIMITED, a Bermuda company,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD SULTANOV and PAUL OSTLING, individuals,<br><br>Defendants. | Case No. **CV. 1700017NC**<br><br>**COMPLAINT FOR VIOLATION OF DTSA, CUTSA, BREACH OF FIDUCIARY DUTY, BREACH OF WRITTEN CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; UNFAIR COMPETITION; COMMON LAW MISAPPROPRIATION AND UNFAIR COMPETITION**<br><br>DEMAND FOR JURY TRIAL |

1   Plaintiffs OOO Brunswick Rail Management ("BRM") and Brunswick Rail Group

2   Limited ("BRL") (collectively "Brunswick" or "Plaintiff") hereby complain and allege the

3   following against Paul J. Ostling ("Ostling") and Richard Sultanov ("Sultanov") (collectively,

4   "Defendants"):

## NATURE OF THE CASE

6   1.      This is an action based upon: (1) the Defend Trade Secrets Act, 18 U.S.C. § 1836,

7   *et seq.*; (2) California's Uniform Trade Secrets Act (Cal. Civ. Code § 3246, *et seq.*); (3) breach of

8   fiduciary duty and duty of loyalty; (4) breach of contract as to Sultanov; (5) breach of the implied

9   covenant of good faith and fair dealing as to Sultanov; (6) unfair competition (under Cal. Bus. &

10  Prof. Code § 17200, *et seq.*); and (7) common law misappropriation and unfair competition.

11  Brunswick seeks injunctive relief, damages, and other appropriate relief to stop Defendants' use,

12  disclosure, and misappropriation of Brunswick's confidential and trade secret documents and

13  information by, among other things, providing it to creditors of Brunswick.

## THE PARTIES

15  2.      BRM is a Russian Limited Liability Company, headquartered in Moscow in the

16  Russian Federation and a subsidiary of BRL. BRL is a Bermuda company, having its

17  headquarters in Hamilton, Bermuda.

18  3.      Brunswick is informed and believes, and thereupon alleges that Defendant Ostling

19  is a citizen of the United States, residing at 1196 Smith Ridge Road, New Canaan, Connecticut

20  06840 and/or at 706 Forest Road, Unit A, Vail, Colorado, 81657.  Defendant Ostling also resides

21  at Trekhprudnyy pereulok 11/13, apartment 9, 123001 Moscow, Russian Federation.  Defendant

22  Ostling owns and uses the email address paul.ostling@pauljostling.com.

23  4.      Brunswick is informed and believes, and thereupon alleges that Defendant

24  Sultanov is a dual citizen of the United States and the Russian Federation, residing at

25  Ozerkovskaya Naberezhnaya 2, building 1, apartment 135, 115184 Moscow, Russian Federation.

26  Defendant Sultanov also maintains a residence at 251 Littleness Ave, Monterey, California,

27  93940.  Defendant Sultanov owns and uses the email address richard.sultanov@gmail.com.

28

5.      Third party Rackspace Hosting, Inc. and Rackspace US, Inc. (collectively,
"Rackspace") is a managed cloud computing company that offers Internet hosting services, email
accounts, Internet domains, and cloud storage.  Rackspace has an agent for service of process at
CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA
95833, and has offices at 620 Folsom St #100, San Francisco, CA 94107.  As described herein,
Defendant Ostling received and sent Brunswick's confidential and trade secret documents and
information using his personal email account at paul.ostling@pauljostling.com that is hosted by
and through Rackspace.

6.      Third party Google, Inc. ("Google") is a technology company that offers Internet-
related services, including email services through Gmail and cloud storage.  Google has an agent
for service of process at CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite
150N, Sacramento, CA 95833, and has offices at 1600 Amphitheatre Parkway, Mountain View,
California 94043.  As described herein, Defendant Sultanov forwarded Brunswick's confidential
and trade secret documents and information to his personal email account
richard.sultanov@gmail.com that is hosted by and through Google.

7.      Defendants, without authorization, have misappropriated Brunswick's confidential
and trade secret documents and information.  Defendants are responsible for the occurrences
alleged herein and are the proximate cause of the injuries Brunswick has suffered.

8.      Upon information and belief, the actions and omissions alleged herein to have
been undertaken by the Defendants were undertaken by each Defendant individually, were
actions and omissions that each Defendant authorized, controlled, directed, or had the ability to
authorize, control or direct, and/or were actions and omissions each Defendant assisted,
participated in, or otherwise encouraged, and are actions for which each Defendant is liable.
Each Defendant aided and abetted the actions of the Defendants set forth below, in that Doe
Defendant had partial or full knowledge of those actions and omissions, provided assistance and
benefited from those actions and omissions, in whole or in part.  Each of the Defendants was the
agent of each of the remaining Defendant, and in doing the things hereinafter alleged, was acting

within the course and scope of such agency and with the permission and consent of other

Defendant.

## JURISDICTION

9.      This Court has original jurisdiction over this action pursuant to the Defend Trade

Secrets Act, 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction

over the other claims asserted herein, pursuant to 28 U.S.C. § 1367. There is complete diversity

and the amount in controversy exceeds the jurisdictional amount, and thus, this action is also

subject to the Court's diversity jurisdiction under 28 U.S.C. § 1332.

## VENUE

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part

of the events or omissions giving rise to the claims pled herein occurred in the Northern District

of California and a substantial part of the property that is the subject of the claims is situated in

the Northern District of California. Specifically, the misappropriated confidential and trade secret

information and documents were sent to an email accounts provided by Google and Rackspace,

with a presence in the Northern District of California, and, on information and belief, still reside

on Google's and Rackspace's servers. Venue is also proper because the Court has personal

jurisdiction over at least one defendant that resides in the district.

## INTRADISTRICT ASSIGNMENT

11.     This is an action for trade secret misappropriation, breach of contract, breach of

implied covenant of good faith and fair dealing, unfair competition, breach of fiduciary duty and

loyalty and misappropriation, where a substantial part of the events or omissions which give rise

to the claims have taken place in Santa Clara County and where a substantial part of the property

that is the subject of the action is situated in Santa Clara County. Thus, pursuant to Civil L.R. 3-

2(c) and (e), this action should be assigned to the San Jose Division.

## BRUNSWICK'S BUSINESS

12.     Brunswick Rail is a private railcar lessor providing freight railcars to large

corporate clients in Russia. Established in 2004, Brunswick Rail currently owns a fleet of over

1    25,000 railcars (as of September 30, 2016), which represents approximately 2% of the total

2    Russian railcar fleet.

3         13.    In January 2016, Brunswick announced a voluntary restructuring of its debt

4    (hereinafter, the "Brunswick Restructuring"). As part of this restructuring, Brunswick is in

5    ongoing discussions and negotiations with its creditors. A successful restructuring is key to

6    maintaining Brunswick's solvency and its competitive advantage in the industry.

7         14.    In May 2016, Brunswick commenced a confidential arbitration proceeding

8    (hereinafter, the "Brunswick Arbitration") against its former CEO Alex Genin ("Genin"), who

9    served in the role prior to Ostling and another earlier CEO. Due to the timing of the arbitration

10   proceeding, its relationship to the restructuring, and the highly-sensitive nature of its subject

11   matter, it is critical to Brunswick and to its restructuring efforts that the arbitration remain

12   confidential.

13                **BRUNSWICK'S TRADE SECRETS AND CONFIDENTIAL INFORMATION**

14        15.    Brunswick takes extraordinary steps in protecting its confidential and trade secret

15   documents and information. Brunswick limits access to sensitive confidential information and

16   trade secrets. Brunswick employees are able to gain access to Brunswick confidential

17   information only through password-protected programs and entry points. Brunswick secures

18   access to its facilities and other employs other security measures that limit and control access to

19   its confidential information and trade secrets. Brunswick takes security measures, including

20   locking its doors and activating an alarm system after business hours and having security guards.

21   During business hours, members of the public are not allowed in the facility unless they have an

22   appointment or otherwise escorted by a Brunswick employee. Employees are expected to treat

23   sensitive documents—including material related to the Brunswick restructuring, its arbitration

24   against former CEO Genin, documents and information regarding internal employment matters,

25   and confidential information regarding customers—as per internal policies and agreements.

26   Employees can only access Brunswick computers and peripheral devices with the proper user ID

27   and passwords. For example, Section 4.7 of Brunswick's information security policy states that:

28

> The Company introduced Access Monitoring and Control System to office premises. Special equipment that includes Proximity card readers, cards and SW that provides for the maintenance of the employee database and their access to offices is used to control doors to offices.
>
> A CCTV system is organised in the Moscow office that provides for storage of recorded video information on a hard drive. The main purpose of the system is to facilitate the investigation in the event of an emergency situation in the office. The owner of the video information is the General Director.

16.    Brunswick enforces the protection of its confidential and trade secret documents and information, through confidentiality provisions in employment agreements, and detailed and strict internal policies on confidentiality, information security and IT use.

17.    For example, Brunswick's information security policy creates a framework for preventing information security vulnerabilities, managing user accounts and passwords, and protecting confidential corporate information within the company's information systems.  At section 4, the policy makes clear that: "Information - is a critically important asset to the Company, which must be protected from unauthorised access, intentional or deliberate deletion or amendment." At section 4.5.1, the policy prohibits establishing any unauthorized "external connections" to Brunswick systems or information, and provides that "[i]the event of non-compliance with this rule, the user will be fully responsible for the consequences of his actions." Section 4.5.3 provides, among other things, that "[t]he use of email boxes not belonging to the Company for the transfer of corporate information is prohibited," that "access to the Internet network and collaborative tools provided for CIS users may be used only in accordance with the Company's business objectives," and that "[i]f confidential or proprietary information of the company must be sent using collaborative tools (e-mail, electronic conference, etc.), it must be encrypted so that it can be read only by the person it was targeted for. Such information is encrypted using the software and algorithms approved by the company."

18.    Brunswick continuously updates and maintains the digital and physical security and confidentiality of its information.  For example, at section 4.8 of the information security policy, Brunswick provides that "[t]he following technical measures are used to control risks:

1    monitoring, system logs analysis, regular inspections, analysis on the side of the management and

2    independent internal audits of information security." and "[a]ctivities for the optimisation of risk

3    includes a regular reassessment of risks and, accordingly, reassessment of policies, risk

4    management, adjustment and updates of information security mechanisms."

5        19.    Brunswick derives value from the secret nature of its confidential and trade secret

6    documents and information.  It does not freely share its confidential material or trade secrets with

7    any entity or person outside of Brunswick.  Brunswick requires all of its employees and

8    consultants to sign employment agreements that include confidentiality, non-disclosure, and non-

9    use provisions that acknowledge its employees and consultants will receive confidential and

10    proprietary documents and information during their employment that belongs to Brunswick.  As

11    discussed (infra), Defendants entered into such agreements.

12        20.    Brunswick's confidentiality provisions define its proprietary and confidential

13    material broadly and prohibit, among other things, its employees and consultants from disclosing

14    Brunswick confidential and proprietary material from anyone outside of Brunswick without its

15    consent or otherwise misappropriating Brunswick's confidential and proprietary material.  These

16    agreements signed by Brunswick's employees establish a contractual duty to Brunswick not to

17    disclose, use, or retain Brunswick's confidential or proprietary information without Brunswick's

18    authorization. Brunswick's trade secrets and confidential documents and information, subject to

19    its confidentiality restrictions and protections, include: board materials, minutes of board

20    meetings, legal counsels' opinions, confidential letters from counsel for certain of the creditors

21    and Plaintiff's responses, internal decision-making and strategy concerning the restructuring and

22    negotiations, internal decision-making and strategy concerning the arbitration with Brunswick's

23    former CEO Genin, Credit Committee materials, Compensation Committee materials, valuation

24    reports by consultants, internal emails regarding ongoing negotiations with clients and internal

25    employment matters.

26

27

28

## DEFENDANTS' DUTIES TO BRUNSWICK

21.     Brunswick hired Sultanov in July 2014 as Director of Strategic Marketing, Development & Communications.  He also became assistant to the General Director and to the CEO in November 2015.

22.     As Director of Strategic Marketing, Development & Communications, Sultanov had access to Brunswick confidential and trade secret documents and information, including management materials prepared for Brunswick's Board of Directors ("Board"), attorney-client communications and attorney work product from Brunswick's outside counsel, material regarding negotiations of customer contracts, and information relating to the Brunswick Restructuring and the Brunswick Arbitration.

23.     Accordingly, as a condition of Sultanov's employment with Brunswick, he agreed not to disclose Brunswick's confidential or trade secret documents and information without Brunswick's prior consent.  Under Article 7, "Confidentiality" of his Employment Agreement, Sultanov agreed not disclose Brunswick's confidential or trade secret documents and information without Brunswick's consent.  Pursuant to Article 7.1 of his Employment Agreement, Sultanov agreed that:

> [d]uring the term of this Contract and after its termination, [he] agrees not to disclose to third parties or use without the consent of the Employer, a confidential information or information containing commercial secrets, the access of which was obtained by [Sultanov] during the period of work for the Employer.

24.     Sultanov also acknowledged in his Employment Agreement the broad definition of Brunswick confidential and trade secret information.  Under Article 7.2 of Sultanov's Employment Agreement, he acknowledge that Brunswick confidential and trade secret information included:

> all specifications, drawings, formulas, archive files, all correspondence, all handbooks or manuals, all reports, documents and protocols, all data classified as business secret, work performance instructions provided orally or in writing, relating to the activities of the Employer or used methods, procedures, know how or equipment....

25.     Moreover, under Article 7.3 of his Employment Agreement, Sultanov agreed not to take any notes, copies, photographs, or summaries of Brunswick's confidential or trade secret documents and information.  Sultanov further agreed that all confidential and trade secret documents and information "must remain the exclusive property of [Brunswick] and must be returned … upon first request."

26.     Also critical to Sultanov's employment was his compliance with Brunswick's code of conduct.  Under Article 4 of his Employment Agreement, Sultanov agreed to comply "with the requirements of the internal code of conduct…," to act with a "[r]esponsible attitude for the property of the Employer," and to "cherish credibility and the reputation of the Employer."

27.     Pursuant to the terms of his employment, Sultanov was also bound by the terms of Brunswick's internal confidentiality policy, internal IT use policy, and internal information security policy.  These policies prohibited sending confidential, internal information to parties email addresses outside of Brunswick.  In particular, section 4.5.3 of the information security policy provides that "the use of email boxes not belonging to the Company for the transfer of corporate information is prohibited."

28.     Brunswick suspended Sultanov on December 12, 2016 following its investigation that revealed Sultanov's misappropriation of Brunswick's trade secrets and confidential information and his breach of his employment agreement.

29.     Brunswick hired Ostling in September 2015 as interim chief executive officer ("CEO").  Prior to that, since June 2012, Ostling was Chairman of the Board.  Under the confidentiality provisions of his employment agreement, Ostling agreed to:

> not except as authorized or required by your duties hereunder use for your own benefit and gain or reveal to any person, firm, company or other organization whatsoever, any trade secrets or Confidential Information bellowing to the Employer or to any other member of the Group or relating to the affairs or dealings of the Group which may come to your knowledge during your employment.  You shall treat the same with complete secrecy.

30.     As CEO, Ostling owed Brunswick a fiduciary duty of care and loyalty, obligating him to "use [his] best endeavours [sic] to promote the interest" of Brunswick.  Pursuant to the

1   terms of his employment, Ostling also was bound by the terms of Brunswick's IT policy that

2   prohibited sending confidential, internal information to parties email addresses outside of

3   Brunswick. Ostling remained as CEO of BRM/BRL until November 13, 2016 when BRM/BRL's

4   Board of Director accepted his resignation.  Ostling is currently involved in a different company

5   as an investor, and Sultanov is working at that same company and assisting Ostling in managing

6   his investment in the new company.

7                 **DEFENDANTS' MISCONDUCT**

8        31.     Unbeknownst to Brunswick, from at least mid-November 2016 through December

9   2016, Ostling and Sultanov misappropriated Brunswick's confidential and trade secret

10   documents.

11        32.     Ostling resigned on November 13, 2016.  Shortly before resigning, Ostling asked

12   Brunswick to give Sultanov a special $10,000 bonus.  Brunswick later discovered that Ostling

13   had been approving Sultanov for an inordinate amount of overtime that accumulated to nearly 40

14   percent additional pay during 2016.  Given Brunswick's financial condition and the timing of

15   Ostling's bonus request in relation to his departure, this was all unusual.

16        33.     In mid-November 2016, Sultanov began exhibiting behavior that was unusually

17   secretive.  Sultanov often would leave the floor where he works, move one floor up, and take and

18   make numerous calls.  This behavior was out of the ordinary.  At that time, Sultanov also came to

19   work on the weekends repeatedly, at a time when he had no reason to be there.  At this time,

20   Sultanov began asking numerous and detailed questions regarding the restructuring and

21   negotiations with bondholders, even though he was not working on such matters and they were

22   entirely outside of the job scope.

23        34.     During this same period of time—and particularly during the last few weeks in

24   December 2016, Brunswick began receiving multiple letters from its creditors with which it was

25   negotiating.  These letters appeared to be coordinated.  In view of the foregoing developments, on

26   December 9, 2016, Brunswick exercised its rights consistent with internal IT policy, to which

27   Sultanov had agreed, and accessed his Brunswick email account to investigate.

28

35.     Upon reviewing Sultanov's work email account, Brunswick discovered that since November 12, 2016, Sultanov had sent a substantial number of trade secret and confidential documents to his personal Gmail account.  There was a dramatic increase in the amount of material Sultanov was sending from Brunswick email account (rsultanov@brunswickrail.com) to his personal Gmail email account (richard.sultanov@gmail.com).  These emails contain trade secret and confidential documents relating to the Brunswick Restructuring and Brunswick Arbitration, as well as commercial information.  A number of the documents are specifically marked "strictly confidential."  This information includes:

(a) Internal decision-making and strategy concerning the restructuring and negotiations, forwarded to Sultanov's private email account on December 9, 2016, emails relating interactions with creditors "Lavender Tankers" and "Sumitomo," and internal information and communications relating to the restructuring.

(b) Board materials, board minutes and presentations of advisors for the board, forwarded to Sultanov's private email account on December 6, 2016, including particularly very recent materials from the end of November and beginning of December.  Internal drafts of communications with creditors were also sent.

(c) Legal counsels' opinions and confidential letters from counsel for certain of the creditors and Plaintiff's responses, forwarded to Sultanov's private email account on December 7, 2016.

(d) Internal information concerning the arbitration with Brunswick's former CEO Genin, forwarded to Sultanov's private email account on December 7, 2016.

(e) Credit Committee materials, forwarded to Sultanov's private email account on December 6 and 10, 2016 in emails containing information about decision making, strategy and the contents of December meetings and minutes.

(f) Compensation Committee materials, forwarded to Sultanov's private email account on December 5-6, 2016.

1           (g) Valuation reports by E&Y, forwarded to Sultanov's private email account on

2                 December 6, 2016.

3 (hereinafter, the "Brunswick Confidential Information").

4      36.     Brunswick did not authorize Sultanov to send these materials to his personal

5 Gmail account. His actions were unauthorized and inconsistent with his obligations under his

6 employment agreement and his duties to the company. By sending these materials to his personal

7 Gmail account, Sultanov violated the Brunswick internal IT policy. The materials that Sultanov

8 forwarded to his personal account were beyond the scope of his duties. There was no legitimate

9 purpose for Sultanov to send the materials to his personal Gmail account.

10      37.     Brunswick's investigation also revealed Sultanov's deliberate attempts to conceal

11 his unauthorized transmission of Brunswick's confidential and trade secret information to his

12 personal Gmail account. On December 10, 2016, Sultanov deleted many of the emails he had

13 forwarded to his personal Gmail account. He also emptied his "trash" folder of his Brunswick

14 email account. Brunswick, however, was able to recover these deleted emails. The investigation

15 revealed that Sultanov deleted numerous emails he forwarded to his personal Gmail account.

16 Those deleted emails include emails that forwarded Brunswick Confidential Information.

17      38.     Brunswick also reviewed Sultanov's phone records. Given the ongoing, sensitive

18 negotiations with its creditors, Brunswick had instructed Sultanov not to communicate to

19 creditors or to anyone outside of the company who may relate to the ongoing negotiations without

20 prior approval from his supervisors. Sultanov disobeyed these instructions. Phone records from

21 Sultanov's work telephone reveal that from November 12, 2016 through December 12, 2016,

22 Sultanov had phone multiple conversations with (a) Ostling, after his resignation from Brunswick

23 and with (b) Denis Mosolov ("Mosolov"), a representative of one of the creditors in a position

24 adverse to Brunswick. Separately, during this same period, on December 6, 2016, Brunswick

25 received a letter from a different creditor, and on December 7, 2016, received a letter from

26 counsel for a group of creditors. The receipt of these letters all appeared coordinated.

27      39.     On December 12, 2016, Brunswick interviewed Sultanov, during which he

28 admitted that he had sent, to his personal Gmail account, confidential information that did not

1   pertain to his duties. Sultanov could not provide a clear explanation for his actions. Sultanov

2   denied that conversations with Mosolov, the creditor's representative, despite the phone records

3   showing that they spoke twice on December 6, 2016. When asked to explain the purpose of the

4   calls and to provide the specifics of the information that he had sent to his private account,

5   Sultanov refused to continue the discussion and left the interview. Brunswick asked Sultanov to

6   return for a follow up interview and further discussion; he refused to do so and did not return to

7   the office. Brunswick also asked Sultanov to return his Brunswick mobile phone and laptop; he

8   refused to do so.

9       40.   Given the results of Brunswick's internal investigation and Sultanov's violations

10   of his employment agreement and the Brunswick IT policy, Brunswick suspended Sultanov's

11   employment effective December 15, 2016. Brunswick has denied Sultanov access to the office,

12   services through his Brunswick-issued mobile phone and laptop in his possession, and his

13   Brunswick email account. Brunswick has also instructed Sultanov not to communicate with other

14   Brunswick employees without management's approval. Moreover, Brunswick has repeatedly

15   requested that Sultanov return his Brunswick-issued mobile phone and laptop, as he is required to

16   do under his employment agreement, but he refuses to do so.

17       41.   Sultanov's suspension did not dissuade him from continuing activities contrary to

18   Brunswick's interests and designed to impede Brunswick's investigation. On December 16,

19   2016, Sultanov made a communication to Brunswick's outside counsel in the United Kingdom,

20   through Ostling, in which he threated to complain to regulatory authorities unless Brunswick

21   dropped its investigation of Sultanov's conduct.

22       42.   Notwithstanding his resignation as CEO in mid-November, Ostling continued to

23   ask his former personal assistant at Brunswick to continue to carry out tasks for him, and received

24   from her confidential internal information regarding Sultanov's investigation and suspension. In

25   particular, on December 13, 2016, Ostling received from his former personal assistant at the

26   company, to his personal email account (paul.ostling@pauljostling.com), three emails containing

27   the internal notice regarding Sultanov's suspension and internal details regarding that suspension.

28   On December 14, 2016, Ostling forwarded each of these confidential emails to Dennis Mosolov,

1  the representative of one of the creditors with which Plaintiffs are negotiating, and to Sultanov.

2  Ostling copied both of these individuals on the same forwarded emails. Since Sultanov's

3  suspension, Ostling also called Aaron Ruben, another representative of the same creditor

4  represented by Mosolov, and Dominic Dolenc, one of Plaintiffs' former restructuring consultants.

5  Ostling's call to Aaron Ruben was on behalf of Sultanov.

6      43.     Since his suspension, Sultanov is working at Ostling's new company and assisting

7  Ostling with his investment in that company. Sultanov has been assisting Ostling with work at

8  that same company while employed by Plaintiffs. In particular, Sultanov's company email

9  account continues to receive meeting request with respect to that particular company.

10      44.     The information that Sultanov sent to his personal email account contains a wide

11  variety of confidential information that would be of interest to numerous parties, including the

12  creditors involved in the Brunswick Restructuring, Brunswick's former CEO Genin adverse to the

13  company in the Brunswick Arbitration, and commercial information that would be of interest to

14  competitors. Given the nature of the information that Sultanov sent to his personal account, there

15  is a serious risk that such information is planned to be shared with creditors, former CEO Genin

16  in the arbitration, competitors or others. Depending on the creditors reactions to receiving certain

17  of the trade secrets and confidential information and precisely what information has been shared

18  with which creditors, including internal strategy and information about the restructuring and the

19  arbitration, such information may inject disruption into the negotiations and potentially risk the

20  success of that effort. Thus, Sultanov's actions create a severe potential risk of disadvantaging

21  Brunswick by frustrating its ability to negotiate a fair and reasonable restructuring with its

22  creditors, by disclosing its internal strategies. There is a risk that creditors who were to obtain

23  this information from Sultanov might use it to gain an unfair advantage during the Brunswick

24  Restructuring. Such disclosure might also create a risk of advantaging some creditors over

25  others, and unfairly advantaging parties associated or affiliated with such creditors. There is also

26  a potential risk that these actions by Sultanov might be inconsistent with the requirements of

27  securities regulations and laws in the jurisdictions in which the company's securities are trading,

28  depending on the timing of the disclosure of the information at issue, as it may be considered to

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

COMPLAINT

1    include price-sensitive information. Further, given that confidential customer and strategy

2    information was included in the conduct, there is a risk of unfair competition as well, if

3    competitors were to receive this data. There is also a serious potential risk of interference with

4    the Brunswick Arbitration. For example, there is no reason that Sultanov should have forwarded

5    such information to himself. If he were to share that information with Brunswick's former CEO

6    Genin or his counsel, who are adverse in the arbitration, this could be extremely damaging to

7    Brunswick.

8         45.    This harm and risk of harm to Brunswick results directly from Sultanov's

9    misconduct. The restructuring is critical and essential to the existence of the business and the

10   confidential arbitration is very important to the business as well. Sultanov's interference or

11   potentially providing trade secret and confidential information to certain creditors risks to impair

12   the ability to complete the restructuring and thus creates risk to Brunswick's existence, which

13   could not be repaired. The sharing of this information also creates potential unfairness in the

14   restructuring, both for Brunswick and other creditors. And, as discussed, Sultanov's potential

15   disclosure of information to an adversary in the arbitration is also the type of injury that could not

16   be repaired. Finally, if sensitive commercial information regarding customers and internal affairs

17   were passed to competitors, it could enable them to unfairly compete against Brunswick. This too

18   creates a serious risk of harm.

19        46.    Similarly, the information that Ostling received at his personal email account from

20   his former personal assistant is sensitive internal employment information and was, in fact,

21   forwarded by Ostling to a creditor who is a contractual counterparty in the restructuring. Given

22   the sensitivity of the existing restructuring negotiations, the fact that Ostling has received and

23   forwarded confidential internal employment information to creditors indicates risks regarding the

24   restructuring process and relations similar to those described above.

25        47.    Given Sultanov's and Ostling's attitude and complete disregard for their

26   obligations to Brunswick, given Sultanov's efforts to destroy the evidence of his

27   misappropriation, given Ostling's willingness to obtain information improperly from his prior

28   personal assistant, and given both of their continued possession and access to trade secreted

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

COMPLAINT

1  information, there is a substantial likelihood that Ostling and Sultanov will continue to

2  misappropriate Brunswick's trade secrets, to the detriment of Brunswick's interests and in

3  furtherance of their own interests. For the same reasons, there is also a substantial risk that

4  Sultanov will continue his efforts to destroy evidence of illicit activity or evade the true facts

5  from coming to light, if he finds out about the relief Brunswick requests. Similarly, given

6  Ostling's exhibition of evasive behavior, by interacting with his former personal assistant and

7  obtaining confidential information from her, there is a risk that he too would not take necessary

8  steps to preserve evidence.

9      48.     Upon information and belief, Defendants have or will provide a benefit to third

10  parties or have profited from their misappropriation of Brunswick's confidential and trade secret

11  documents and information by disclosing those documents and information to other parties.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

Trade Secret Misappropriation Under the Defend Trade Secrets Act

(18 U.S.C. § 1836 *et seq.*)

16      49.     Brunswick realleges and incorporates by reference each and every allegation set

17  forth in paragraphs 1 through 48 above.

18      50.     Brunswick owns and posses certain confidential and trade secret documents and

19  information as alleged above that relates to the Brunswick Restructuring and Brunswick

20  Arbitration.

21      51.     Brunswick's confidential and trade secret documents and information relates to

22  products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped

23  and/or ordered in, interstate or foreign commerce.

24      52.     Brunswick has taken reasonable steps to protect the secrecy of its confidential and

25  trade secret documents and information, including the secrecy of the Brunswick Confidential

26  Information Defendants have misappropriated.

27      53.     Defendants have misappropriated the Brunswick Confidential Information in the

28  improper and unlawful manner as alleged herein.

54.     Defendants have failed to return to Brunswick the Brunswick Confidential Information and have attempted to conceal their theft of such information.  On information and belief, if Defendants are not enjoined, they will continue to misappropriate, disclose, and use for their benefit and to Brunswick's detriment the Brunswick Confidential Information.

55.     Because Brunswick's remedy at law is inadequate, Brunswick seeks—in addition to damages—a temporary, preliminary, and permanent injunctive relief to and to protect its confidential and trade secret documents and information as well as Brunswick's legitimate business interest.  Critical to the Brunswick competitive advantage is the confidentiality of its negotiations with its creditors.  Brunswick will continue to suffer irreparable harm absent injunctive relief.

56.     Brunswick has a substantial likelihood of success on the merits because of Defendants' blatant, willful, and malicious misappropriation of trade secrets through the unlawful methods alleged herein.

57.     Defendants' misappropriation of Brunswick's confidential information and trade secrets has caused and will continue to cause Brunswick substantial injury, including, but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets.  Defendants have been unjustly enriched by their misappropriation of Defendants' confidential information and trade secrets.

58.     Defendants' misappropriation of the Brunswick Confidential Information was intentional, knowing, willful, malicious, fraudulent, and oppressive. Brunswick is entitled to an award of exemplary damages and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

Trade Secret Misappropriation Under California's Uniform Trade Secret Act

(Cal. Civ. Code § 3426 *et seq.*)

59.     Brunswick realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 58 above.

60.     Brunswick owns and posses certain confidential and trade secret documents and information as alleged above that relates to the Brunswick Restructuring and Brunswick

1  Arbitration.  These are trade secrets within the meaning of California Civil Code Sections 3426

2  through 3426.11.

3    61.    Brunswick has taken reasonable steps to protect the secrecy of its confidential and

4  trade secret documents and information, including the secrecy of the Brunswick Confidential

5  Information Defendants have misappropriated by, among other things, limiting access to

6  confidential and trade secret documents and information, requiring employees—including the

7  Defendants—to sign confidentiality agreements, implementing policies that require

8  confidentiality, and limiting access to its computers and requiring passwords.

9    62.    Defendants have misappropriated the Brunswick Confidential Information in the

10  improper and unlawful manner as alleged herein.

11    63.    Defendants have failed to return to Brunswick the Brunswick Confidential

12  Information and have attempted to conceal their theft of such information.  On information and

13  belief, if Defendants are not enjoined, they will continue to misappropriate, disclose, and use for

14  their benefit and to Brunswick's detriment the Brunswick Confidential Information.

15    64.    Because Brunswick's remedy at law is inadequate, Brunswick seeks—in addition

16  to damages—a temporary, preliminary, and permanent injunctive relief to and to protect its

17  confidential and trade secret documents and information as well as Brunswick's legitimate

18  business interest.  Critical to the Brunswick competitive advantage is the confidentiality of its

19  negotiations with its creditors.  Brunswick will continue to suffer irreparable harm absent

20  injunctive relief.

21    65.    Brunswick has a substantial likelihood of success on the merits because of

22  Defendants' blatant, willful, and malicious misappropriation of trade secrets through the unlawful

23  methods alleged herein.

24    66.    Defendants' misappropriation of Brunswick's confidential information and trade

25  secrets has caused and will continue to cause Brunswick substantial injury, including, but not

26  limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its

27  trade secrets.  Defendants have been unjustly enriched by their misappropriation of Defendants'

28  confidential information and trade secrets.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17                                    COMPLAINT

67.     Defendants' misappropriation of the Brunswick Confidential Information was intentional, knowing, willful, malicious, fraudulent, and oppressive, all within the meaning of California Civil Code, Section 3294.  Defendants misappropriated Brunswick's confidential and trade secret information intentionally and knowingly and with a deliberate intent to benefit themselves and to injure Brunswick.  Brunswick is entitled to its damages, in an amount to be determined at trial, as well as injunctive relief, and an award of punitive damages and/or treble damages and attorney's fees pursuant to California Civil Code, Sections 3426.3(c) and 3426.4.

## THIRD CLAIM FOR RELIEF

### Breach of Fiduciary Duty and Duty of Loyalty

68.     Brunswick realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 67 above.

69.     As employees of Brunswick, Defendants owed Brunswick a duty of loyalty and was obligated to act with the utmost good faith, and in the best interest of Brunswick.

70.     Brunswick was entitled to place its trust and confidence in Defendants and entitled to expect Defendants to act with the utmost good faith toward it in carrying out the employment and the business of Brunswick.

71.     Brunswick relied on Defendants' loyalty and integrity and their faithful performance of their responsibilities.

72.     Defendants took advantage of Brunswick's faith in them—thereby breaching their fiduciary duties—by failing to perform their duties to Brunswick, by acting in conflict of interest, by engaging in activities for their own benefit and to the detriment of the company, and by providing secret information and interacting with for Brunswick's creditors with which Brunswick was and is negotiating as part of the Brunswick Restructuring.

73.     Defendants knowingly and willing breached their duty of loyalty to Brunswick by misappropriating Brunswick's confidential and trade secret documents and information, and engaging in acts that undermine Brunswick's negotiation position with its creditors or otherwise jeopardize that process, and which expose Brunswick's trade secrets to risk from multiple sources.

74.     Defendants acted in a manner inconsistent with their agency and trust by misappropriating Brunswick's confidential and trade secret documents and information to the injury of Brunswick and for their own benefit and the benefit of certain third parties, and by acting against Brunswick's interests while and after employed by Brunswick.

75.     As a direct and proximate cause of Defendants' disloyalty to Brunswick and breach of their duties, Brunswick has been and is being harmed, and faces severe risk of irreparable harm.

76.     Brunswick is entitled to its damages, in an amount to be determined at trial, as well as disgorgement from Defendants, and the forfeiture and return of all monies and compensation paid to them during their period of disloyalty, the exact amount to be determined at trial. Brunswick is further entitled to injunctive relief against Defendants and all those acting in concert or participation with them, remedying their past improper conduct, and preventing such conduct in the future.

77.     Defendants are still in possession of Brunswick's confidential and trade secret information, are able to access it, and are able to use this information to benefit certain Brunswick creditors in the Brunswick Restructuring, and to benefit other parties. Defendants have shared this confidential information with others who may use, or are using this information to Brunswick's detriment.

78.     As a direct and proximate results of Defendants' disloyalty, Brunswick has been irreparably injured and has suffered damages in an amount to be determined at trial. Because its remedy at law is inadequate, Brunswick seeks, in addition to damages, preliminary and permanent injunctive relief, enjoining Defendants, and all those acting in concert or participate with them, from further improper conduct, from further misappropriation and use of Brunswick's confidential and trade secret documents and information, seizure and return of the trade secrets and confidential information, and physical media, and all copies thereof.

1

**FOURTH CLAIM FOR RELIEF**

2

Breach of Written Contract (Sultanov)

3      79.     Brunswick realleges and incorporates by reference each and every allegation set

4    forth in paragraphs 1 through 78 above.

5      80.     Pursuant to Sultanov's Employment Agreement, Sultanov was obligated to, *inter*

6    *alia*: (a) to hold in strict confident and not to disclose Brunswick's confidential and trade secret

7    documents and information outside of Brunswick without Brunswick's approval; (b) comply with

8    the Brunswick's internal code of conduct; (c) act responsibly for Brunswick's property; (d)

9    return all Brunswick property and all confidential and trade secret documents and information to

10   Brunswick upon first request; and (e) not to transfer Brunswick's confidential and trade secret

11   documents and information to email that did not belong to Brunswick.

12      81.     Sultanov also breached his contractual obligations by transferring Brunswick's

13   confidential and trade secret documents and information, including the Brunswick Confidential

14   Information, from his Brunswick email account to his personal Gmail account without

15   Brunswick's approval.  Sultanov breached his contractual obligations by communicating with

16   creditors of Brunswick without authorization.

17      82.     Moreover, Sultanov breached his contractual obligations by failing to return his

18   Brunswick mobile phone and laptop and the Brunswick confidential and trade secret documents

19   and information, after Brunswick requested that he do so.  Further, Sultanov breached his

20   contractual obligations by failing to follow Brunswick's internal code of conduct.  Critically, his

21   misappropriation of Brunswick's confidential and trade secret documents and information, his

22   failure to comply with explicit instructions, and his interference with an internal investigation are

23   inconsistent with Brunswick's internal code of conduct.

24      83.     As a direct and proximate result of Sultanov's breaches, Brunswick has suffered

25   extensive damage, the exact amount to be determined at trial.

26      84.     Brunswick will continue to be directly and proximately damaged and irreparably

27   harmed, if Sultanov is not enjoined from further violation of his contractual obligations and if he

28   is not directed to comply therewith, and prohibited from using and disclosing Brunswick's

confidential and trade secret documents and information.  Brunswick has not adequate remedy at law as money damages along will not fully compensate Brunswick, and injunctive relief is warranted to prevent further irreparable harm to Brunswick.

85.    Brunswick accordingly seeks damages and preliminary and permanent injunctive relief.

### FIFTH CLAIM FOR RELIEF

Breach of Implied Covenant of Good Faith And Fair Dealing (Sultanov)

86.    Brunswick realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 85 above.

87.    Sultanov's Employment Agreement contained an implied covenant of good faith and fair dealing.  This implied covenant obligated Sultanov to refrain from doing any act that would deprive Brunswick from the benefits of the agreement or that would impede Brunswick from performing any or all of the conditions of the agreement that it agreed to perform.

88.    Sultanov's misconduct as described herein breached the implied covenant of good faith and fair dealing.  Sultanov failed to protect the secrecy of Brunswick's confidential and trade secret documents and information or to otherwise adequately perform his duties for Brunswick.  Instead, Sultanov misappropriated Brunswick's confidential and trade secret documents and information as described herein.

89.    As a proximate result of these breaches and of the other improper conduct alleged above, Brunswick has been irreparable injured and has suffered damages in an amount to be determined at trial.  Because its remedy at law is inadequate, Brunswick also seeks, in addition to its damages, preliminary and permanent injunctive relief.

### SIXTH CLAIM FOR RELIEF

Unfair Competition Cal. Bus. & Prof. Code §§ 17200, *et seq.*

90.    Brunswick realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 89 above.

91.    By obtaining Brunswick's confidential and proprietary material without its authorization or consent and disclosing the material and information outside of Brunswick,

1  including to Brunswick creditors, and creating a risk of disclosure to Brunswick's competitors,

2  Defendants have competed unfairly.  Through their actions, Defendants have compromised the

3  confidentiality of Brunswick's trade secrets, undermined Brunswick's competitive advantage in

4  the market place, and has caused Brunswick to incur costs and damage.  Among other things,

5  Defendants have given Brunswick's creditors an unfair advantage in negotiations during the

6  Brunswick Restructuring and created a risk of providing further benefits to creditors, adverse

7  parties in an arbitration and competitors, and to the detriment of Brunswick.  Defendants,

8  moreover, have simultaneously compromised Brunswick's opportunity to benefit from its

9  ingenuity and efforts as embodied in its confidential and trade secret documents and information.

10       92.     These acts and practices, as described herein, constitute unfair competition in

11  violation of California Business and Professions Code, Sections 17200 *et seq.*, as follows:

12       93.     As a direct and proximate result of Defendants' unfair competition in violation of

13  Business and Professions Code, Sections 17200 *et seq.*, Brunswick is informed and believes, and

14  thereon alleges, that Defendants have been unjustly enriched in an amount not yet ascertained.

15            (a) Defendants' violations of Civil Code Sections 3426 *et seq.*, as alleged herein,

16                constitute unlawful business acts or practices, within the meaning of Business

17                and Professions Code Sections 17200 *et seq.*; and

18            (b) Defendants' acts in violation of their employment agreements and the implied

19                covenant of good faith and fair dealing inherent therein, as alleged herein, are

20                part of a concerted effort by Defendants to significantly threaten Brunswick's

21                competitive advantage, specifically as to the Brunswick Restructuring.

22                Defendants' conduct constitute unfair business acts or practices within the

23                meaning of Business and Professions Code, Sections 17200 *et seq.*

24       94.     As a direct and proximate result of Defendants' unfair competition in violation of

25  Business and Professions Code, Sections 17200 *et seq.*, Brunswick has suffered and will continue

26  to suffer great and irreparable harm.  Defendants threaten to commit further violations of

27  Business and Professions Code, Sections 17200 *et seq.* and, unless restrained and enjoined, will

28  do so, all to Brunswick's irreparable damage.  Brunswick's remedy at law is not by itself

1   adequate to compensate Brunswick for the harm Defendants have inflicted and threatened.

2   Accordingly, Brunswick seeks preliminary and permanent injunctive relief pursuant to, *inter alia*,

3   Business and Professions Code, Section 17203.

### SEVENTH CLAIM FOR RELIEF

Common Law Misappropriation and Unfair Competition

6   95.     Brunswick realleges and incorporates by reference each and every allegation set

7   forth in paragraphs 1 through 94 above.

8   96.     Brunswick has expended considerable time and money developing the confidential

9   and proprietary material that Defendant obtained – including but not limited to, information

10  regarding Brunswick products and systems, presentations outlining Brunswick's current systems

11  and plans for future products, and other intellectual property, as well as internal valuable

12  strategies regarding the operations of the business and credit facilities, all of which is the

13  company's valuable intellectual property.

14  97.     Defendant has taken Brunswick's confidential and proprietary material without

15  authorization and has disclosed and/or used the Brunswick confidential and proprietary material

16  and information without authorization or permission from Brunswick.

17  98.     As a consequence of Defendant's unauthorized disclosure and use of Brunswick's

18  confidential and proprietary material, Brunswick has been harmed.  Brunswick is informed and

19  believes, and on that basis alleges, that Defendant's conduct constitutes common law

20  misappropriation and unfair competition and were carried out willfully, fraudulently, maliciously

21  and with the wanton disregard of Brunswick's rights, thereby entitling Brunswick to

22  compensatory and punitive damages to be proven at trial.

### PRAYER FOR RELIEF

24  WHEREFORE, plaintiff Brunswick prays for judgment in its favor and against

25  Defendants, inclusive as follows:

26  A.      Awarding damages as described in each of the above claims, in favor of

27  Brunswick and against Defendants in amounts to be determined at trial, and further directing

28  forfeiture and disgorgement of all amounts paid by Brunswick to Defendants during the period of

1    disloyalty;

2          B.       Granting a temporary and permanent injunction against Defendants, enjoining

3    them from violating their legal and contractual duties to Brunswick, from misappropriating or

4    from using Brunswick's confidential and trade secret documents and information, including the

5    Brunswick Confidential Information, and directing Defendants to return all of Brunswick's

6    property;

7          C.       Awarding punitive damages in favor of Brunswick and against Defendants in the

8    an amount to be determined at trial;

9          D.       Awarding Brunswick pre-judgment and post-judgment interest, its attorneys' fees,

10   and costs and other expenses incurred in this action;

11         E.       Granting Brunswick such other and further relief as this Court deems just and

12   proper.

13                                    **JURY DEMAND**

14         Brunswick demands a jury trial for all issues so triable.

15

16   Dated: January 3, 2017                    ORRICK, HERRINGTON & SUTCLIFFE LLP

17                                    _____
18                                           GABRIEL M. RAMSEY
                                             Attorneys for Plaintiffs
19                                      OOO Brunswick Rail Management and
                                           Brunswick Rail Group Limited

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT