E-filing

ADR

FILED

JAN 04 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1   GABRIEL M. RAMSEY (STATE BAR NO. 209218)
    gramsey@orrick.com
2   JACOB M. HEATH (STATE BAR NO. 238959)
    jheath@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    405 Howard Street
4   San Francisco, CA 94105
    Telephone:    +1-415-773-5700
5   Facsimile:    +1-415-773-5759

6   MICHAEL C. TU (STATE BAR NO. 186793)
    mtu@orrick.com
7   ORRICK, HERRINGTON & SUTCLIFFE LLP
    777 South Figueroa Street, Suite 3200
8   Los Angeles, CA 90017
    Telephone:    +1-213-629-2020
9   Facsimile:    +1-213-612-2433

10  Attorneys for Plaintiffs
    OOO Brunswick Rail Management and
11  Brunswick Rail Group Limited

12

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15                       SAN JOSE DIVISION

16
    OOO BRUNSWICK RAIL MANAGEMENT,       Case No.   CV 1700017 NC
17  a Russian limited liability company, and
    BRUNSWICK RAIL GROUP LIMITED, a       **BRIEF IN SUPPORT OF PLAINTIFFS'**
18  Bermuda company,                      ***EX PARTE*** **APPLICATION FOR**
                                          **TEMPORARY RESTRAINING ORDER,**
19                Plaintiffs,             **SEIZURE ORDER, EVIDENCE**
                                          **PRESERVATION AND EXPEDITED**
20          v.                            **DISCOVERY, AND ORDER TO SHOW**
                                          **CAUSE RE PRELIMINARY**
21  RICHARD SULTANOV and PAUL             **INJUNCTION**
    OSTLING, individuals,
22
                  Defendants.
23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL OVERVIEW...................................................................................... 2

    A.      Brunswick Takes Reasonable Efforts To Protect Its Trade Secrets........................ 3

    B.      Defendants Are Subject To Binding Agreements With Brunswick,
        Prohibiting Improper Transmittal, Disclosure Or Use Of Brunswick's
        Confidential, Proprietary And Trade Secret Information .................................... 3

    C.      Defendants Misappropriated Brunswick's Confidential, Proprietary And
        Trade Secret Documents And Information ...................................................... 5

    D.      Sultanov Attempted To Destroy Evidence To Conceal His Unauthorized
        Transmittal Of Brunswick's Confidential And Trade Secret Information
        And Ostling Has Engaged In Evasive Behavior .............................................. 8

III.    LEGAL ARGUMENT .......................................................................................... 9

    A.      Brunswick Is Entitled To An Ex Parte Seizure Order Under The DTSA
        Against Defendants For The Return Of Copies Of Trade Secrets And
        Brunswick-Issued Devices .......................................................................... 9

        1.      Brunswick Will Suffer Immediate And Irreparable Injury If A
            Seizure Order Is Not Issued .......................................................... 10

        2.      Balance Of Hardships Tip Strongly In Favor Of Brunswick.................... 12

        3.      Brunswick Is Likely To Succeed In Showing That Defendants
            Misappropriated Brunswick's Trade Secrets .................................... 12

        4.      Defendants Have Actual Possession Of The Trade Secrets And The
            Mobile Phone And Laptop To Be Seized And Brunswick Describes
            With Reasonable Particularity The Matter To Be Seized ...................... 14

        5.      Defendants Would Destroy, Move, Hide, Or Otherwise Make Trade
            Secrets, And Physical Devices On Which Trade Secrets Are Stored,
            Inaccessible To The Court If He Were Given Notice Of This Action...... 15

        6.      Plaintiffs Have Not Publicized The Requested Seizure............................ 15

        7.      Relief Under Fed. R. Civ. P. 65 Is Not Adequate ..................................... 16

    B.      Brunswick Is Entitled To An Ex Parte Seizure Order To Preserve
        Evidence, Under Fed. R. Civ. P. 64 and 65 And Under The Court's
        Inherent Authority...................................................................................... 16

    C.      Brunswick Is Entitled To An Ex Parte Injunction Order Under Rule 65.............. 17

        1.      Brunswick Will Be Irreparably Harmed Absent A TRO .......................... 18

        2.      Brunswick Is Likely To Succeed On The Merits Of Its Trade Secret
            Misappropriation Claims Under The CUTSA ......................................... 18

            a.      Brunswick's Confidential Information Constitutes
                Protectable Trade Secrets Under The CUTSA.............................. 18

            b.      Defendants Misappropriated Brunswick's Trade Secrets In
                 Violation Of The CUTSA ........................................................ 19

### TABLE OF CONTENTS
(continued)

| | | | | Page |
|---|---|---|---|---|
| | | 3. | Brunswick Is Likely To Succeed On The Merits Of Breach Of Fiduciary Duty And Duty Of Loyalty | 20 |
| | | 4. | Brunswick Is Likely To Succeed On The Merits Of Breach Of Written Contract | 21 |
| | | 5. | Brunswick Is Likely To Succeed On The Merits Of Breach Of Implied Covenant Of Good Faith And Fair Dealing | 22 |
| | | 6. | Brunswick Is Likely To Succeed On The Merits Of Unfair Competition Under Cal. Bus. & Prof. Code §17200 | 22 |
| | D. | | Pursuant To The All Writs Act (28 U.S.C. § 1651(A))The Court May Order Third-Party Email Providers To Make A Copy Of The Entirety Of The Contents Of The Email Account | 23 |
| | E. | | Ex Parte Relief Is Proper | 24 |
| IV. | | | CONCLUSION | 25 |

ii

1

## **TABLE OF AUTHORITIES**

2

**Cases**                                            **Page(s)**

3

*In re Application of United States for an Order Authorizing An In-Progress Trace of Wire,*
4
    616 F.2d 1122 (9th Cir. 1980)....................................................................................23

5

*Artec Grp., Inc. v. Klimov,*
6
    No. 15-cv-03449-RMW, 2016 U.S. Dist. LEXIS 114202 (N.D. Cal. Aug. 25, 2016) .............16

*In re Baldwin-United Corp.,*
7
    770 F.2d 328 (2d Cir. 1985)........................................................................................23

8

*Bright Sols. for Dyslexia, Inc. v. Doe,*
9
    No. 15-cv-01618-JSC, 2015 U.S. Dist. LEXIS 117252 (N.D. Cal. Sept. 1, 2015) ...........16, 17

10

*Courtesy Temp. Serv., Inc. v Camacho,*
    222 Cal. App. 3d 1278 (1990)....................................................................................22

11

*Crosby v. Petromed, Inc.,*
12
    No. 2:09-cv-05055-EFS, 2009 U.S. Dist. LEXIS 73419 (E.D. Wash. Aug. 6, 2009).............25

13

*Dell Inc. v. BelgiumDomains, LLC,*
14
    No. 07-22674, 2007 U.S. Dist. LEXIS 98676 (S.D. Fla. Nov. 20, 2007)................................23

15

*Fortinet Inc. v. FireEye Inc.,*
    No. 5:13-CV-02496-EJD, 2014 U.S. Dist. LEXIS 139762 (N.D. Cal. Sep. 30, 2014) ............19

16

*FPI Dev., Inc., v. Nakashima,*
17
    231 Cal. App. 3d 367 (1991)......................................................................................21

18

*Future Motion, Inc. v. Changzhou First Int'l Trade Co.,*
19
    No. 2:16-cv-00013-MMD-CWH, Dkt. No. 11 (D. Nv. Jan. 6, 2016)......................................17

20

*Gallagher Benefits Servs., Inc. v. De La Torre,*
    No. C 07-5495 VRW, 2007 WL 4106821 (N.D. Cal. Nov. 16, 2007) .....................................10

21

*Glover v. BIC Corp.,*
22
    6 F.3d 1318 (9th Cir. 1993).........................................................................................16

23

*Goichman v. Rheuban Motors, Inc.*
    682 F.2d 1320 (9th Cir. 1982).....................................................................................24

24

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70,*
25
    415 U.S. 423 (1974)..................................................................................................25

26

*Ice Consulting Inc. v. Jensen,*
27
    No. 16-CV-04349, Dkt. No. 19 (N.D. Cal. Aug. 8, 2016)......................................................25

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1
2
*Link v. Wabash R.R. Co.,*
   370 U.S. 626 (1962)................................................................................................16

3
*Mathews v. Eldridge,*
   424 U.S. 319 (1976)................................................................................................24

4
5
*Microsoft Corporation v. John Does 1-2,*
   No. 2:11-cv-00222, Dkt. No. 19 (E.D. Wa. Mar. 9, 2011) ........................................25

6
7
*Music Grp. Macao Commer. Offshore, Ltd. v. Foote,*
   No. 14-cv-03078-JSC, 2015 U.S. Dist. LEXIS 81415 (N.D. Cal. June 22, 2015) ...................20

8
*Oculus Innovative Scis., Inc. v. Nofil Corp.,*
   No. C 06-1686-SI, 2007 WL 4044867 (N.D. Cal. Nov. 15, 2007)............................................21

9
10
*Pueblo of Laguna v. United States,*
   60 Fed. Cl. 133 (2004) .............................................................................................16

11
12
*Reebok Int'l Ltd. v. Marnatech Enters. Inc.,*
   970 F.2d 552 (9th Cir. 1992).....................................................................................17

13
*Regents of Univ. of Cal. v. Am. Broad. Cos.,*
   747 F.2d 511 (9th Cir. 1984).....................................................................................12

14
15
*SolarBridge Techs., Inc. v. Ozkaynak,*
   No. C 10-cv-03769-EJD, 2012 U.S. Dist. LEXIS 81403 (N.D. Cal. June 12, 2012) ...............19

16
17
*United States v. New York Tel. Co.,*
   434 U.S. 159 (1977)................................................................................................23

18
*W. Directories, Inc. v. Golden Guide Directories, Inc.,*
   No. C 09-1625 CW, 2009 U.S. Dist. LEXIS 52023 (N.D. Cal. June 8, 2009) ........................10

19
20
*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ...................................................................................................18

21
22
*Wyndham Resort Dev. Corp. v. Bingham,*
   No. 2:10-cv-01556-GEB-KJM, 2010 U.S. Dist. LEXIS 80268 (E.D. Cal. July 8, 2010) ........12

23
**Statutes**

24
18 U.S.C. § 1836(b)(1)....................................................................................................9

25
18 U.S.C. § 1836(b)(2)(A)(i)............................................................................................9

26
18 U.S.C. § 1836(b)(2)(A)(ii)..........................................................................................10

27
18 U.S.C. § 1836(b)(3)(A)(i)............................................................................................9

28
18 U.S.C. § 1839(3) ......................................................................................................13

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

18 U.S.C. § 1839(5)(A) .................................................................................................13

18 U.S.C. § 1839(6)(A) .................................................................................................13

12 U.S.C. § 1651(a) ......................................................................................................23

Cal. Bus. & Prof. Code §§ 17200 .................................................................................22

Cal. Civ. Code § 3426.1(a) ...........................................................................................19

Cal. Civ. Code § 3426.1(b) ...........................................................................................19

Cal. Civ. Code § 3426.1(d) ...........................................................................................19

Defend Trade Secrets Act, 18 U.S.C. 1836(b) ..................................................... *passim*

**Federal Rules**

Fed. R. Civ. P. 64 .........................................................................................................17

Fed. R. Civ. P. 64 and 65(b).......................................................................................1, 2

Fed. R. Civ. P. 65 .................................................................................................. *passim*

Fed. R. Civ. P. 65(b)(1)................................................................................................25

Fed. R. Civ. P. 65(b)(A)................................................................................................18

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

## I.    **INTRODUCTION**

Plaintiffs OOO Brunswick Rail Management ("BRM") and Brunswick Rail Group Limited ("BRL") (collectively "Brunswick" or "Plaintiffs") submit this *Ex Parte* Application For Temporary Restraining Order, Seizure Order, Evidence Preservation, Expedited Discovery, And Order To Show Cause Re Preliminary Injunction ("Application") seeking relief against Defendants Richard Sultanov ("Sultanov") and Paul Ostling ("Ostling") (collectively "Defendants").  Brunswick moves this Court, pursuant to the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. 1836(b), for an *ex parte* order against Defendants for the seizure of its property containing trade secrets in the current possession of Defendants.  Brunswick also moves for an evidence preservation order against Defendants, including seizure of the evidence with the assistance of the United States Marshals Service ("Marshals Service"), under Fed. R. Civ. P. 64 and 65(b) and the Court's inherent authority, for purposes of ensuring effective enforcement of injunctive relief and preserving evidence necessary for this action.

Defendants each transmitted confidential and trade secret information to their personal email accounts and have sent at least some of this sensitive information to Brunswick's creditors, in violation of Defendants' duties and the law.  Sultanov has also refused to return his company-issued mobile phone and laptop that contain Brunswick trade secrets.  Defendants' actions pose a severe risk to Brunswick's negotiations with its creditors.  Now, in the middle of a critical voluntary restructuring, the evidence suggests there is a serious risk that Defendants have already disclosed and plan to continue to disclose the trade secrets to creditors in order to disadvantage Brunswick in its ongoing negotiations, to provide an advantage to certain creditors over others, or to gain some personal advantage to Defendants.  These sensitive negotiations are critical to Brunswick maintaining its business and solvency.  The information that Defendants have misappropriated would be of interest to other parties, including a former CEO Alexander Genin ("Genin") who is adverse to Brunswick in a sensitive arbitration and to its competitors and potential bond buyers.  Disclosure of Brunswick's trade secrets and confidential information to these parties would cause it grave harm.  Unless Brunswick is able to preserve and to discover evidence of the scope of use and disclosure, mitigating the injury and containing the

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1  dissemination of sensitive information that has occurred will be impossible.  The injury will be

2  irreparable and severe.  Thus, a seizure order, evidence preservation order and injunction are

3  necessary to prevent the immediate harm to Brunswick.

4  **II.    FACTUAL OVERVIEW**

5        The facts relevant to this application, appearing more fully in the accompanying

6  declarations, are briefly as follows:

7        Brunswick is a private railcar lessor providing freight railcars to large corporate clients in

8  Russia.  Declaration of Elena Naumova in Support of Application ("Naumova Decl.") ¶ 3.

9  Established in 2004, Brunswick Rail currently owns a fleet of over 25,000 railcars, which

10  represents approximately 2% of the total Russian railcar fleet.  *Id.*  BRM is a Russian Limited

11  Liability Company, headquartered in Moscow in the Russian Federation, and is a subsidiary of

12  BRL.  BRL is a Bermuda company, headquartered in Hamilton, Bermuda.  *Id.*

13        Brunswick hired Ostling in June 2012 as Chairman of the Board.  In September 2015,

14  Brunswick named Ostling as interim chief executive officer ("CEO").  *Id.* ¶ 6.  Ostling remained

15  as CEO of BRM/BRL until November 13, 2016 when BRM/BRL's Board of Directors accepted

16  his resignation.  *Id.* ¶ 8.  BRM hired Sultanov in July 2014 as Director of Strategic Marketing,

17  Development & Communications.  *Id.* ¶ 9.  He also became the assistant to the General Director

18  and to the CEO in November 2015.  *Id.*  In his position, Sultanov had access to Brunswick

19  proprietary, confidential, and trade secret documents and information, including management

20  materials prepared for Brunswick's Board of Directors ("Board"), attorney-client

21  communications and attorney work product from Brunswick's outside counsel, material regarding

22  negotiations of creditor and customer contracts, and information relating to Brunswick's

23  restructuring.  *Id.* ¶¶ 9, 22.  Brunswick suspended Sultanov on December 12, 2016 following its

24  investigation that revealed Sultanov's misappropriation of Brunswick's trade secrets and

25  confidential information and his breach of his employment agreement and legal duties.  *Id.* ¶ 11.

26        In January 2016, Brunswick announced a voluntary restructuring of its debt (hereinafter,

27  the "Brunswick Restructuring").  Naumova Decl. ¶ 4.  As part of this restructuring, Brunswick is

28  in ongoing, sensitive discussions and negotiations with its creditors, shareholders, and other

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1    stakeholders. *Id.* A successful restructuring is key to maintaining Brunswick's ability to continue

2    operations and to have a competitive advantage in the industry. *Id.*

3    **A.    Brunswick Takes Reasonable Efforts To Protect Its Trade Secrets**

4    Brunswick takes extraordinary steps to protect its confidential and trade secret

5    information. Naumova Decl., ¶ 12. Brunswick limits access to sensitive confidential information

6    and trade secrets. *Id.* Brunswick employees are able to gain access to its confidential information

7    only through password-protected programs and entry points. *Id.* Brunswick secures access to its

8    facilities and employs other security measures that limit and control access to its confidential

9    information and trade secrets. *Id.* ¶¶ 12-14. Brunswick also takes security measures, including

10   locking its doors and activating an alarm system after business hours and having security guards.

11   In fact, section 4.7 of the information security policy, at Exhibit 4, provides that:

> The Company introduced Access Monitoring and Control System to office
> premises. Special equipment that includes Proximity card readers, cards and SW
> that provides for the maintenance of the employee database and their access to
> offices is used to control doors to offices.

14   Naumova Decl. ¶ 13, Ex. 4. Members of the public are not allowed into the companies' facilities

15   unless they have an appointment or are otherwise escorted by a Brunswick employee. All

16   sensitive documents are kept in separate secured locations. Employees can only access

17   Brunswick computers and peripheral devices with the proper user ID and passwords. *Id.* ¶ 12.

18   Brunswick employees are also expected to read and agree to an internal Information

19   Security Policy, Internal Confidentiality Policy, and IT Use Policy (collectively "Brunswick

20   Internal Policies"), as part of their employment obligations. Naumova Decl., Exs. 5 (Sultanov

21   Employment Agreement, p. 4), 2-4.

22   **B.    Defendants Are Subject To Binding Agreements With Brunswick,
           Prohibiting Improper Transmittal, Disclosure Or Use Of Brunswick's
           Confidential, Proprietary And Trade Secret Information**

24   All of Brunswick's employees are required to acknowledge and agree to the Brunswick

25   Internal Policies in addition to the Employment Agreement that prohibits the unauthorized use

26   and/or disclosure of confidential and proprietary information as well as the use of private email

27   for business purposes. Naumova Decl., Exs. 5 (Sultanov Agreement, p. 4), 2-4. Defendants each

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1    agreed to the Brunswick Internal Policies and Employment Agreement.  Copies of these

2    agreements are attached as Exhibit 1-5 to the Naumova Decl.

3         On July 7, 2014, Sultanov signed an employment contract, attached as Exhibit 5 to the

4    Naumova Decl.  The confidentiality provision sets forth:

5         During the term of this Contract and after its termination, the Employee agrees not
          to disclose to third parties or use without the consent of the Employer, a
6         confidential information or information containing commercial secrets, the access
          to which was obtained by the Employee during the period of work for the
7         Employer.  Naumova Decl., Ex. 5, ¶ 7.1

8    Further, provision 7.3 states:

9         The Employee must not take notes, make copies, photographs or summaries of
          confidential information referred to in the preceding paragraphs of this Article,
10        except when necessary for the performance by the Employee of his obligations
          under this Contract. All such information is confidential and must remain the
11        exclusive property of the Employer and must be returned to him upon first request.

12   His employment agreement also required "[c]ompliance with the requirements of the internal

13   code of conduct…," that he act with "[r]esponsible attitude for the property of the Employer," and

14   that he "cherish credibility and the reputation of the Employer."  Naumova Decl. ¶ 9.  Sultanov's

15   employment agreement further required that "[a]ll such information is confidential and must

16   remain the exclusive property of the Employer and must be returned … upon first request."  *Id.*

17        On February 16, 2016, Ostling signed an employment agreement with BRM, attached as

18   Exhibit 1 to the Naumova Decl.  Ostling's employment agreement states:

19        You shall not except as authorized or required by your duties hereunder use for
          your own benefit and gain or reveal to any person, firm, company or other
20        organization whatsoever, any trade secrets or Confidential Information belonging
          to the Employer or to any other member of the Group or relating to the affairs or
21        dealings of the Group which may come to your knowledge during your
          employment.  You shall treat the same with complete secrecy.  This restriction
22        shall continue to apply after the termination of your employment without
          limitation in time, but shall cease to apply to any information or knowledge which
23        may subsequently come into the public domain, other than by way of unauthorized
          disclosure.  Naumova Decl., Ex. 1, ¶ 7.1.
24
     Further provision 7.3 sets forth:
25
          All records, documents and other papers, computer files and/or other electronically
26        generated or stored information (together with any copies or extracts thereof) made
          or acquired by you in the course of your employment shall be the property of the
27        Group and must be returned to it on the termination of your employment. The
          copyright in all such records, documents and papers shall at all times belong to the
28        Group.

4

1    Ostling also agreed to "use [his] best endeavours [sic] to promote the interests of" Brunswick."

2    Naumova Decl. ¶ 6.

3         Ostling and Sultanov also agreed to the terms of Brunswick's Internal Policies, which

4    prohibited sending confidential, internal information to parties' email addresses outside of

5    Brunswick. *Id.* These policies are attached as Exhibits 2-4 to the Naumova Decl. In particular,

6    section 4.5.3 of the information security policy, at Exhibit 4, provides that "the use of email boxes

7    not belonging to the Company for the transfer of corporate information is prohibited." *Id.* This

8    section also allows Brunswick to randomly check "for the compliance with the requirements of

9    the mandatory encryption of confidential information." *Id.*

10   **C.    Defendants Misappropriated Brunswick's Confidential, Proprietary And Trade Secret Documents And Information**

11        Sultanov and Ostling misappropriated Brunswick's confidential and trade secret

12   documents and information from mid-November 2016 through December 2016. Sultanov has

13   taken information that could provide certain creditors of Brunswick a material advantage in the

14   Brunswick Restructuring, jeopardize the restructuring itself, and potentially advantage other

15   parties. Naumova Decl. ¶¶ 13, 31. Ostling has actually shared some confidential internal

16   information with such Brunswick's creditors. *Id.* ¶ 29. The evidence suggests that Sultanov and

17   Ostling may have taken these acts to advantage themselves in some way. *Id.* ¶¶ 18-30. In their

18   respective positions, Sultanov and Ostling had access to Brunswick's confidential and proprietary

19   information. Sultanov used a company-issued mobile phone and laptop to access his emails and

20   business contact information. *Id.* ¶ 26.

21        On November 13, 2016, Brunswick accepted Ostling's resignation. Naumova Decl. ¶ 19.

22   Shortly before this, Ostling requested that Sultanov receive a special $10,000 bonus. *Id.*

23   Brunswick later also discovered Ostling had approved an inordinate amount of overtime for

24   Sultanov, which accumulated to nearly 40 percent additional pay over during 2016 for Sultanov.

25   *Id.* This was all unusual, given the financial condition of Brunswick and the timing of Ostling's

26   bonus request in relation to his departure in November 2016. *Id.*

27        Also, in November 2016 Sultanov began exhibiting behavior that was unusually secretive.

28

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO, SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1   Naumova Decl. ¶ 20.  Around this time, Sultanov was observed often leaving the floor upon

2   which he worked, moving one floor up, and taking and making numerous calls.  *Id.*  Sultanov was

3   also observed coming to work on the weekends repeatedly, even though he had no reason to be

4   there at that time.  *Id.*  Notably, at this time, Sultanov began asking numerous and detailed

5   questions regarding the restructuring and negotiations with bondholders, notwithstanding that he

6   was not working on such matters and they were entirely outside of the scope of his job.  *Id.*  At

7   this same time, Brunswick began receiving unusually coordinated correspondence from creditors.

8   *Id.* ¶ 21.  These odd behaviors and the foregoing developments were sufficient cause to trigger an

9   internal investigation.  *Id.*  On December 9, 2016, Brunswick exercised its rights, consistent with

10   the internal IT policy Sultanov had signed, and accessed his Brunswick email account to

11   investigate.  *Id.*  Brunswick found a dramatic increase in the amount of information Sultanov was

12   sending from Brunswick email account (rsultanov@brunswickrail.com) to his personal email

13   account (richard.sultanov@gmail.com).  *Id.*  Sultanov had never complained of trouble with his

14   Brunswick computer, made any request to work more regularly from home, or offered some other

15   rationale for the dramatic increase of forwarded email to his personal email account.  *Id.*  There

16   was no reason he should have sent any of this information to his personal account.

17           Upon reviewing the email account, Brunswick discovered that since November 12, 2016,

18   Sultanov had, in particular, sent a very large number of trade secret and confidential documents

19   from his work email to his personal email account.  Naumova Decl. ¶ 22.  These emails contain

20   trade secret and confidential documents relating to the Brunswick Restructuring and Brunswick

21   Arbitration.  *Id.* ¶ 22.  A number of the documents are specifically marked "strictly confidential."

22   This information includes: internal decision-making and strategy concerning the restructuring and

23   negotiations; board materials, minutes and presentations of board meetings; legal counsels'

24   opinions and confidential letters from counsel for certain of the creditors and Plaintiffs'

25   responses; internal decision making and strategy concerning the arbitration with Genin; Credit

26   Committee materials and valuation reports.  *Id.*  The materials were beyond the scope of

27   Sultanov's duties and there was no need for him to have them in his possession at all.  *Id.* ¶ 23.

28   This was a complete surprise to Brunswick as it, at no point, authorized Sultanov to send these

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1   materials to his personal email account. *Id.* ¶ 23. His actions were unauthorized and inconsistent

2   with his obligations under his employment agreement and his duties to the company. *Id.* By

3   sending these materials to his personal email account, Sultanov also violated the Brunswick

4   Information Security Policy. *Id.* There was no legitimate purpose for Sultanov to do so. *Id.*

5          Given the ongoing, sensitive negotiations with its creditors, Brunswick had instructed

6   Sultanov not to communicate to creditors or to anyone outside of the company who may relate to

7   the ongoing negotiations, without prior approval from his supervisors. Naumova Decl. ¶ 27.

8   Despite this, Sultanov's work telephone records reveal that from November 12, 2016 through

9   December 12, 2016, Sultanov had multiple phone conversations with (a) Ostling, after his

10  resignation from Brunswick and with (b) Denis Mosolov ("Mosolov"), a representative of one of

11  the creditors which is a contractual counterparty to Brunswick. *Id.* ¶ 25. As indicated, during

12  precisely this same period, the communications of Brunswick's various creditors became

13  inexplicably coordinated. *Id.* For example, on December 6, 2016, Brunswick received a letter

14  from a different creditor and on December 7, 2016, received an apparently coordinated letter from

15  counsel for a group of creditors. *Id.* As part of the investigation, Sultanov was interviewed. At

16  that time he could not provide a clear explanation for forwarding the confidential email and lied

17  to the company, denying that he had calls with Mosolov, the creditor's representative. *Id.* ¶ 26.

18  He abruptly ended the interview, and did not return. *Id.*

19         Upon assessing all of the foregoing information, and Sultanov's violations of his

20  employment agreement and Brunswick Internal Policies, Brunswick suspended Sultanov's

21  employment effective December 12, 2016. *Id.* ¶ 27. Brunswick has since denied Sultanov access

22  to the office, use of services through his company-issued mobile phone and laptop in his

23  possession, and access to his Brunswick email account. *Id.* Brunswick has repeatedly requested

24  that Sultanov return his company-issued mobile phone and laptop, as required under his

25  employment agreement. *Id.* ¶ 26. He refuses to and has yet to return his company-issued mobile

26  phone and laptop that contain Brunswick's trade secrets. *Id.*

27         Sultanov's suspension did not dissuade him from continuing to engage in conduct that

28  injures Brunswick's interests and is designed to avoid the facts relating to the instant dispute.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1    Naumova Decl. ¶ 28.  Instead, he "doubled down."  On December 16, 2016, through a

2    communication to Brunswick's outside counsel in the United Kingdom by Ostling, Sultanov

3    threatened to complain to regulatory authorities unless Brunswick dropped its investigation of

4    Sultanov's conduct.  *Id.*  Sultanov's threat is entirely baseless and demonstrates an improper

5    motivation to prevent Brunswick from continuing its efforts to investigate Sultanov and stop

6    dissemination of valuable trade secrets.  *Id.*

7           Ostling has also separately misappropriated confidential, proprietary and trade secret

8    information.  Notwithstanding his resignation as CEO in mid-November, he has communicated

9    with Brunswick's employees, obtained confidential information from them, and shared that

10   information with representatives of Brunswick's creditors.  Naumova Decl. ¶ 29.  Specifically, on

11   December 13, 2016, Ostling received from his former personal assistant at the company, to his

12   personal email account (paul.ostling@pauljostling.com), three emails containing the internal

13   notice regarding Sultanov's suspension and internal details regarding that suspension.  *Id.*  They

14   were sent from her personal account and she was not supposed to have access.  *Id.*  This shows

15   Ostling's continued efforts to unlawfully gain confidential Brunswick data as well as his

16   suspicious interest in Sultanov's position at Brunswick.  Indeed, he should have had no interest

17   because he was no longer CEO of Brunswick.  On December 14, 2016, Ostling forwarded each of

18   these emails to Mosolov, the representative of one of the creditors with which Brunswick are

19   negotiating, and to Sultanov.  *Id.*  Ostling copied both of these individuals on the same forwarded

20   emails.  *Id.*  Since Sultanov's suspension, Ostling also called Aaron Ruben, another representative

21   of the Brunswick creditor represented by Mosolov, and Dominic Dolenc, one of Brunswick's

22   restructuring consultants.  *Id.*  Ostling's call to Ruben was on behalf of Sultanov.  *Id.*  Since

23   Sultanov's suspension, he has been working at Ostling's new company.  *Id.* ¶ 30.  There is also

24   evidence that Sultanov began assisting this other company while employed by Plaintiffs.  *Id.*

25       **D.    Sultanov Attempted To Destroy Evidence To Conceal His Unauthorized
                 Transmittal Of Brunswick's Confidential And Trade Secret Information And**
26       **       Ostling Has Engaged In Evasive Behavior**

27          After sending himself Brunswick's confidential and trade secret information, Sultanov

28   attempted to conceal the unauthorized transmission of that information to his personal email

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1   account.  Naumova Decl. ¶ 24.  Brunswick's investigation revealed that on December 10, 2016,

2   Sultanov deleted many of the emails he had forwarded to his personal Gmail account.  *Id.* ¶ 24.

3   Those deleted emails include forwarded Brunswick confidential information.  *Id.*  Sultanov then

4   took the further, more drastic step of emptying his Brunswick email account "trash" folder.  *Id.*

5   However, Brunswick's IT department recovered these deleted emails and confirmed that Sultanov

6   had sent himself the trade secrets and had tried to conceal his conduct.  *Id.*  Similarly, Ostling has

7   exhibited evasive behavior, by having his personal assistant perform tasks for him after he

8   resigned, unbeknownst to the company, and obtaining confidential employment information from

9   her about the Sultanov investigation, which he then passed on to a creditor.  *Id.* ¶ 34.

10  **III.    LEGAL ARGUMENT**

11          **A.      Brunswick Is Entitled To An *Ex Parte* Seizure Order Under The DTSA
                 Against Defendants For The Return Of Copies Of Trade Secrets And
12               Brunswick-Issued Devices**

13          The DTSA allows an "owner of a trade secret that is misappropriated" to bring a civil

14  action if the "trade secret is related to a product or service used in, or intended for use in,

15  interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).  A court may grant an injunction to

16  prevent any "actual or threatened misappropriation." 18 U.S.C. § 1836(b)(3)(A)(i).  Further, a

17  court may issue an *ex parte* order under the DTSA "providing for the seizure of property

18  necessary to prevent the propagation or dissemination of the trade secret that is the subject of the

19  action." 18 U.S.C. § 1836(b)(2)(A)(i).  For an *ex parte* order to issue, the Court must find that: 1)

20  an order issued pursuant to Rule 65 or another form of equitable relief would be inadequate; 2) an

21  immediate and irreparable injury will occur without the seizure; 3) harm to the applicant of

22  denying the application outweighs the harm to the legitimate interests of the defendant and

23  substantially outweighs the harm to any third parties who may be harmed by such seizure; 4) the

24  applicant is likely to succeed in showing that the information is a trade secret and the defendant

25  misappropriated the trade secret or conspired to use improper means to misappropriate the trade

26  secret; 5) the person against whom seizure would be ordered has actual possession of the trade

27  secret and any property to be seized; 6) the application describes with reasonable particularity the

28  matter to be seized; 7) if given notice, defendant would destroy, move, hide, or otherwise make

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

such matter inaccessible to the court; and 8) applicant has not publicized the requested seizure.

18 U.S.C. § 1836(b)(2)(A)(ii).  Brunswick meets each of these requirements.

### 1.    Brunswick Will Suffer Immediate And Irreparable Injury If A Seizure Order Is Not Issued

"In general, the imminent use of a trade secret constitutes irreparable harm." *Gallagher*

*Benefits Servs., Inc. v. De La Torre*, No. C 07-5495 VRW, 2007 WL 4106821, at *5 (N.D. Cal.

Nov. 16, 2007), *order aff'd in part, vacated in part sub nom. Gallagher Benefit Servs., Inc. v. De*

*La Torre*, 283 F. App'x 543, 546 (9th Cir. 2008) ("[T]he goodwill and customers that Gallagher

would lose absent equitable relief supports [the lower court's] finding of irreparable injury.").

The Court in this district presumes that a plaintiff will suffer irreparable if its proprietary

information is misappropriated.  *W. Directories, Inc. v. Golden Guide Directories, Inc.*, No. C 09-

1625 CW, 2009 U.S. Dist. LEXIS 52023, at *18-19 (N.D. Cal. June 8, 2009) ("And it is probable

that Plaintiff will suffer irreparable harm if Defendants make misrepresentations concerning its

business practices or otherwise interfere with its relationships with its advertisers.").  The

DTSA's legislative history clarifies that its purpose is to provide "expedited relief on an *ex parte*

basis in the form of a seizure of property ... where necessary to preserve evidence or prevent

dissemination of a trade secret:

> The ex parte seizure provision is an important remedy for trade secret owners because it "enable[s] a trade secret owner under limited, controlled conditions, to proactively contain a theft before it progresses and the trade secret is lost." *For example, the damage caused by the large-scale 2006 theft of know-how related to DuPont's innovative Kevlar product, in which there was significant destruction of evidence, would likely have been mitigated by the existence of a seizure remedy.*

S. Rep. No. 114-220, Defend Trade Secrets Act of 2016, at 3 (Mar. 7, 2016) (emphasis added).

Here, it is clear that the threatened damage to Brunswick is immediate and irreparable.  If

Defendants are allowed to keep Brunswick's trade secrets—whether it be copies of trade secrets

or hardware, specifically Sultanov's mobile phone and laptop, on which trade secrets are found—

then there is a severe and immediate risk that they will destroy this evidence and/or disseminate

the trade secrets to continue to intervene with the Brunswick Restructuring, to advantage certain

creditors, or to provide advantage to Genin in the arbitration, competitors or themselves.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10    BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1    Sultanov has already tried to delete evidence of his misappropriation even before knowing of the

2    extent of Brunswick's internal investigation; he certainly will do so if he learns of this action.

3    Ostling continued working with and obtaining confidential information from his former personal

4    assistant, without informing the company.  There is a serious risk that he would not preserve

5    evidence.  This is just the type of harm—*i.e.*, dissemination and destruction—that Congress

6    intended to prevent with the seizure provision of the DTSA.

7           Defendants' improper actions—including the unauthorized transmittal of Brunswick trade

8    secrets—creates a severe and immediate risk of negative impact to the current Brunswick

9    Restructuring.  Naumova Decl., ¶ 31.  The information that Sultanov sent to his personal email is

10   very sensitive and would be of interest to numerous parties, including creditors, Genin in the

11   arbitration, competitors or others.  *Id.*  Indeed, there is evidence that confidential information has

12   already been shared with creditors, and there are apparently extensive interactions between

13   Defendants and the creditors, without authorization of the company.  It is very likely that sharing

14   of trade secrets and confidential information with creditors, including internal strategy and

15   information about the restructuring and the arbitration, will severely jeopardize the restructuring

16   and cause it to fail.  *Id.*  It creates a severe and immediate risk of disadvantaging Brunswick by

17   frustrating its ability to negotiate a fair and reasonable restructuring.  There is a severe and

18   immediate risk that certain creditors may obtain unfair advantage, or be inconsistent with

19   securities regulations and laws.  *Id.*  There is also a severe and immediate risk of potential

20   interference with the arbitration, if the internal information on that topic was sent to adverse party

21   in that proceeding, or if internal customer data were sent to competitors.  *Id.*

22           This actual harm and these potential risks to Brunswick results directly from Defendants'

23   misconduct.  *Id.* ¶ 32.  Critically, Defendants' interference and sharing of trade secret and

24   confidential information with creditors is likely to severely and immediately impair the ability to

25   complete the restructuring and thus risks Brunswick's very existence; this risk could not be

26   repaired.  *Id.*  Similarly, disclosure of information to an adversary in an arbitration is the type of

27   injury that could not be repaired.  *Id.*  Given that it is clear that at least some confidential

28   information has already been sent to creditors, and there have been multiple unauthorized

11

1    communications with them, the harm to Brunswick not theoretical; it is happening now and, if

2    allowed to, will continue to undermine the success of the Brunswick Restructuring, the success of

3    which is critical to the existence of its business. *Id.*

4         Absent a seizure order, Defendants will continue to have access to Brunswick's property

5    and trade secrets, and thus the threat of continued harm to Brunswick is immediate.

6              **2.      Balance Of Hardships Tip Strongly In Favor Of Brunswick**

7         The balance of hardships in this case likewise compels the issuance of the requested relief.

8    As described in Section III.A.1. (*supra*), Brunswick will suffer irreparable harm if Defendants are

9    allowed to continue using and disseminating its trade secrets.  By contrast, Defendants will suffer

10   no undue hardship if relief is granted as the seizure would merely deprive them of property that

11   they wrongfully obtained and to which they have no legitimate claim.  Further, there is no harm to

12   any third party because the seizure of information, including Sultanov's mobile phone and laptop,

13   and any data on computers in Defendants actual possession (whether located at a third party

14   facility or not), would pose not undue burden to any third party.  As discussed in Section III.D.

15   (*infra*), at most, third party Internet service providers would simply be ordered to conduct routine

16   and unburdensome copying and preserving of data to assist in implementing the requested relief.

17        When the absence of hardship to Defendants is weighed against the certainty of

18   irreparable harm against Brunswick if the requested relief is granted, the balance of hardships

19   weighs heavily in favor of Brunswick.  *Wyndham Resort Dev. Corp. v. Bingham*, No. 2:10-cv-

20   01556-GEB-KJM, 2010 U.S. Dist. LEXIS 80268, at *19-20 (E.D. Cal. July 8, 2010) (court

21   agreed balance of hardships weighed in favor of plaintiff where defendants had no legitimate

22   interest in the unauthorized disclosure of a party's proprietary business information); *Regents of*

23   *Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 515 (9th Cir. 1984) (balance of the hardships

24   favored the plaintiff where the defendants would suffer no appreciable hardship).

25             **3.      Brunswick Is Likely To Succeed In Showing That Defendants**
                        **Misappropriated Brunswick's Trade Secrets**

26        Congress enacted the DTSA to provide a "single, national standard for trade secret

27   misappropriation with clear rules and predictability for everyone involved." *See* H. Rep. No. 114-

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1    529, Defend Trade Secrets Act of 2016, at *5 (Apr. 26, 2016). The DTSA defines "trade secret"

2    broadly to include:

3        *all forms and types of financial, business, scientific, technical, economic, or*

4        *engineering information, including patterns, plans, compilations, program devices, formulas* ... whether tangible or intangible, and whether or how stored,
compiled, or memorialized physically, electronically, graphically,

5        photographically, or in writing if (A) the owner thereof has taken reasonable
measures to keep such information secret; and (B) the information derives

6        independent economic value, actual or potential, from not being generally known
to, and not being readily ascertainable through proper means by, another person

7        who can obtain economic value from the disclosure or use of the information....

8    18 U.S.C. § 1839(3) (emphasis added). Specifically, the DTSA covers "all forms and types of

9    financial, business ... information" if 1) the owner has taken reasonable measures to keep such

10    information secret; and 2) the information derives independent economic value, actual or

11    potential, from not being generally known to the public.

12       The information at issue are trade secrets under the DTSA. The Brunswick confidential

13    information Defendants took—*e.g.,* valuation reports, negotiation emails, Board materials—are

14    forms of business and financial information. Brunswick took reasonable measures to keep this

15    information secret, such as setting password-protected programs and entry points, locking doors

16    and activating an alarm system, keeping members of the public away from the facilities without

17    an escort, and requiring that all employees agree to an internal IT Security Policy, Confidentiality

18    Policy and IT Use Policy. Moreover, Brunswick derives significant economic value from this

19    information because it gives Brunswick a strategic advantage in negotiating the Brunswick

20    Restructuring, carrying out its sensitive arbitration, and competing in the industry.

21       Defendants also misappropriated these trade secrets through improper means. The DTSA

22    defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows

23    or has reason to know that the trade secret was acquired by improper means." 18 U.S.C. §

24    1839(5)(A). The term "improper" includes "theft, bribery, misrepresentation, breach or

25    inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other

26    mean." 18 U.S.C. § 1839(6)(A).

27       Sultanov knew or had reason to know that he had acquired Brunswick's trade secrets by

28    improper means when he transmitted them to his personal email account and refused to return the

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1   company-issued mobile phone.  First, he signed an agreement setting forth that he would "not

2   take notes, make copies, photographs or summaries of confidential information" and return

3   confidential information "upon first request" by Brunswick.  Naumova Decl., Ex. 5.  Second, he

4   deleted evidence showing the transmittal of the trade secrets to his personal email account.  Third,

5   during an interview with Brunswick, Sultanov misrepresented that he had not communicated with

6   creditors and could not provide a legitimate reason why he needed to send trade secrets to his

7   personal email, after which he became flustered and refused to participate further in the interview.

8          Similarly, Ostling knew or had reason to know that he had acquired Brunswick's trade

9   secrets by improper means when he transmitted them to his personal email account and creditors

10  with interests adverse to Brunswick.  Ostling was subject to Brunswick's IT, security, and

11  confidentiality policies.  Ostling signed an agreement not to use Brunswick confidential

12  information for his own benefit or to reveal such information to "any person, firm, company or

13  other organization whatsoever" and "shall treat the same with complete secrecy," including "after

14  the termination of your employment . . . ."  *Id.*, Ex. 1.

15          **4.     Defendants Have Actual Possession Of The Trade Secrets And The
                 Mobile Phone And Laptop To Be Seized And Brunswick Describes
16               With Reasonable Particularity The Matter To Be Seized**

17          Brunswick seeks the seizure of (1) any copies of Brunswick's trade secrets in Defendants'

18  possession and (2) the Company issued mobile phone and laptop which Sultanov refuses to return

19  to Brunswick.  Sultanov has actual possession of both of these items.  Ostling has actual

20  possession of Brunswick's trade secrets.  Brunswick has evidence that both Sultanov and Ostling

21  have forwarded or caused to be forward such trade secret emails to personal email accounts from

22  Brunswick email accounts, both while employed with Brunswick and after such employment.  In

23  addition, Brunswick has described the trade secrets with reasonable particularity, as follows:

24  •   Internal decision-making and strategy concerning the restructuring and negotiations,
        forwarded to Sultanov's private email account on December 9, 2016, emails relating
25      interactions with creditors "Lavender Tankers" and "Sumitomo," and internal information and
        communications related to the activities of the body responsible for organizing and overseeing
26      the restructuring;

27  •   Board materials, minutes and presentations of board meetings, forwarded to Sultanov's
        private email account on December 6, 2016, including particularly very recent materials from
28      the end of November and beginning of December.  Internal drafts of communications with

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1   creditors were also sent.

2   • Legal counsels' opinions and confidential letters from counsel for certain of the creditors and Plaintiff's responses, forwarded to Sultanov's private email account on December 7, 2016.

3

4   • Internal decision making and strategy concerning the arbitration with Genin, forwarded to Sultanov's private email account on December 7, 2016.

5   • Credit Committee materials, forwarded to Sultanov's private email account on December 6 and 10, 2016 in emails containing information about decision making, strategy and the contents of December meetings and minutes.

6

7   • Compensation Committee materials, forwarded to Sultanov's private email account on December 5-6, 2016, regarding the activities of that body.

8

9   • Valuation reports by consultants, forwarded to Sultanov's private email account on December 6, 2016.

10      The trade secrets are located in the possession of Sultanov, in his personal email account

11   (richard.sultanov@gmail.com) and in the possession of Ostling, in his personal email account

12   (paul.ostling@pauljostling.com).  Likewise, the company-issued mobile phone and laptop that

13   Sultanov kept is known to be in his personal possession.

14          **5.    Defendants Would Destroy, Move, Hide, Or Otherwise Make Trade Secrets, And Physical Devices On Which Trade Secrets Are Stored,**

15   **Inaccessible To The Court If He Were Given Notice Of This Action**

16      If Defendants are allowed to keep Brunswick's trade secrets—whether it be copies of

17   trade secrets or hardware (in particular, the mobile phone and laptop in Sultanov's possession), on

18   which trade secrets are found—then they will destroy this evidence and/or disseminate the trade

19   secrets to continue to interfere with the Brunswick Restructuring.  Sultanov has already tried to

20   delete evidence of his misappropriation even before knowing of the extent of Brunswick's

21   internal investigation, he certainly will do so if he learns of this action.  Ostling has also engaged

22   in behavior that demonstrates a risk that he would destroy evidence as well.  He has engaged in

23   behavior designed to conceal his activities, including circumventing Plaintiffs' management in

24   the act of receiving confidential information from his former personal assistant and forwarding it

25   to creditors of Plaintiffs.  As noted above, this is just the type of harm—*i.e.,* dissemination and

26   destruction) that Congress intended to prevent with the seizure provision of the DTSA.

27          **6.    Plaintiffs Have Not Publicized The Requested Seizure**

28      To date, Brunswick has not made—nor will it make before or during its execution—any

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO, SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    statement regarding the requested seizure to any third party or the public.

2             7.      Relief Under Fed. R. Civ. P. 65 Is Not Adequate

3         As to the seizure of Brunswick's trade secrets in the possession of Defendants and

4    Sultanov's company-issued mobile phone and laptop in his possession, a simple injunction order

5    is inadequate because it would not guarantee that Brunswick is able to physically obtain all copies

6    of its trade secret in Defendants' possession, and it would certainly not guarantee that the

7    company-issued mobile phone and laptop containing trade secrets would be returned to

8    Brunswick before Defendants have the opportunity to further disseminate the information and

9    further impact the Brunswick restructuring, arbitration or other business activities. An *ex parte*

10   seizure order, however, under which the Marshals Service in the Northern District of California,

11   shall take trade secret materials in Defendants' possession and the mobile phone and laptop in

12   Sultanov's possession into its custody, would provide effective relief.

13        **B.      Brunswick Is Entitled To An *Ex Parte* Seizure Order To Preserve Evidence,
14                Under Fed. R. Civ. P. 64 and 65 And Under The Court's Inherent Authority**

15        This court has the inherent authority to make appropriate evidentiary rulings and to

16   prevent destruction or spoliation of relevant evidence. *See Glover v. BIC Corp.*, 6 F.3d 1318,

17   1329 (9th Cir. 1993). "Federal courts have the implied or inherent power to issue preservation

18   orders as part of their general authority 'to manage their own affairs so as to achieve the orderly

19   and expeditious disposition of cases.'" *Artec Grp., Inc. v. Klimov*, No. 15-cv-03449-RMW, 2016

20   U.S. Dist. LEXIS 114202, at *4 (N.D. Cal. Aug. 25, 2016) (*quoting Pueblo of Laguna v. United

21   States*, 60 Fed. Cl. 133, 135 (2004)). Federal courts have the implied or inherent power to issue

22   preservation orders as part of their general authority "'to manage their own affairs so as to

23   achieve the orderly and expeditious disposition of cases.'" *Pueblo*, 60 Fed. Cl. at 135-36 (*quoting

24   Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). "[C]ourts have held that they have the

25   inherent power to order that evidence be preserved and have, for good cause, required that

26   specific procedures be adopted to ensure such preservation." *Pueblo*, 60 Fed. Cl. at 135.

27        In particular, the All Writs Act allows courts to direct third party online service and cloud

28   providers can be ordered to carry out acts in furtherance of preservation orders. *See Bright Sols.*

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16        BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1  *for Dyslexia, Inc. v. Doe*, No. 15-cv-01618-JSC, 2015 U.S. Dist. LEXIS 117252, at *5-9 (N.D.

2  Cal. Sept. 1, 2015) (where there is a risk that relevant information will be destroyed, granting

3  preservation order and directing third parties eBay, PayPal, and Google to preserve digital

4  account information pertaining to activities of defendants).  Federal courts also are empowered to

5  grant a seizure order to preserve evidence and assets pursuant to their inherent power and Rule 64

6  and 65.  *See Reebok Int'l Ltd. v. Marnatech Enters. Inc.*, 970 F.2d 552, 559 (9th Cir. 1992)

7  (Federal course may order seizures under their inherent authority as they have "the power to issue

8  a preliminary injunction in order to prevent a defendant from dissipating assets in order to

9  preserve the possibility of equitable remedies."); *see also Future Motion, Inc. v. Changzhou First*

10  *Int'l Trade Co.*, No. 2:16-cv-00013-MMD-CWH, Dkt. No. 11 (D. Nv. Jan. 6, 2016) (ordering

11  seizure of evidence of intellectual property theft, with the assistance of the U.S. Marshals Service,

12  pursuant to Rule 65 and inherent authority).

13       Here, where there is a serious risk that Defendants may destroy evidence that is critical to

14  its ability to mitigate the irreparable injury at issue, a seizure order to preserve that evidence,

15  including ordering copies from third party service providers and ordering the assistance of the

16  U.S. Marshals is appropriate.  Further, to the extent that it is found, as a technical matter, that the

17  trade secrets at issue in email and cloud computing accounts at third party service providers are in

18  the possession not of Defendants, but rather in possession of these third parties, in such instance

19  the DTSA seizure provision may not apply.  Therefore, ordering seizure of a copy of the trade

20  secret material in order to preserve evidence and mitigate harm, is warranted and appropriate

21  pursuant to Rule 64, 65 and the Court's inherent power.

22       **C.      Brunswick Is Entitled To An *Ex Parte* Injunction Order Under Rule 65**

23       Brunswick request a TRO that prevents Defendants from (1) accessing, using, disclosing,

24  or making available any of Plaintiffs' trade secrets and confidential information; (2) violating any

25  agreements with Plaintiffs; (3) communicating with Plaintiffs' creditors, adverse parties to the

26  arbitration or competitors, or communicating any trade secret or confidential information; or (4)

27  taking any other acts to injure the Plaintiffs.

28       This court may issue a temporary restraining order ("TRO") and preliminary injunction to

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1    prevent "immediate and irreparable injury, loss, or damage [ ] to the movant." Fed. R. Civ. P.

2    65(b)(A). The movant must establish (1) that it will be irreparably harmed absent temporary

3    injunctive relief and (2) either (a) likelihood of success on the merits or (b) sufficiently serious

4    questions going to the merits to make it fair ground for litigation and balancing of hardships

5    tipping decidedly in its favor. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

6    As discussed above, Brunswick is likely to succeed on the merits of the trade secrets claim under

7    the DTSA. Brunswick is also likely to succeed on the merits of 1) the CUTSA; 2) breach of

8    fiduciary duty and duty of loyalty; 3) breach of written contract against Sultanov; 4) breach of

9    implied covenant of Good Faith and Fair Dealing against Sultanov; 5) unfair competition claim;

10   6) common law misappropriation and unfair competition.

### 1. Brunswick Will Be Irreparably Harmed Absent A TRO

12       If Defendants are not prohibited from misappropriating trade secrets and confidential

13   information, violating any agreements with Plaintiffs, from communicating with Plaintiffs'

14   creditors, adverse parties to the arbitration, or competitors, or from communicating any trade

15   secret or confidential information, then there is a significant risk that they will continue to

16   disseminate the information to Brunswick's creditors, adverse parties to the arbitration and

17   competitors, in a manner that will create severe and irreparable injury to Brunswick. As

18   discussed above (*see* Section III.A.1. *supra*), given the great sensitivity of this information, the

19   status of the restructuring and the status of the arbitration, once such communications and

20   disruptions occur, they could not be repaired. Indeed, its very existence could be threatened. The

21   risk is imminent, given that it is obvious that Defendants are already communicating confidential

22   information to creditors and having numerous unauthorized communications with them. Thus,

23   Brunswick will be irreparably harmed absent temporary injunctive relief.

### 2. Brunswick Is Likely To Succeed On The Merits Of Its Trade Secret Misappropriation Claims Under The CUTSA

#### a. Brunswick's Confidential Information Constitutes Protectable Trade Secrets Under The CUTSA

27       Under CUTSA, "Trade secret means information, including a formula, pattern,

28   compilation, program, device, method, technique, or process, that: (1) Derives independent

18

economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." As discussed above in III.A.3. Brunswick's confidential information meets both these requirement. *See* Cal. Civ. Code § 3426.1(d); *see also Fortinet Inc. v. FireEye Inc.*, No. 5:13-CV-02496-EJD, 2014 U.S. Dist. LEXIS 139762, at *19 (N.D. Cal. Sep. 30, 2014) (finding non-public proprietary competitive knowledge and intelligence could be trade secrets). Thus, the confidential information is considered a trade secret under CUTSA.

### b. Defendants Misappropriated Brunswick's Trade Secrets In Violation Of The CUTSA

The CUTSA defines "misappropriation" as (1) the "[a]cquisition of a trade secret by a person who knows or has reason to know the trade secret was acquired by improper means" or (2) disclosure or use of another's trade secret without express or implied consent by someone who knew or had reason to know it (i) was derived through improper means; (ii) acquired under "circumstances giving rise to a duty to maintain its secrecy or limit its use;" or (iii) was derived from or through a person who "owed a duty to the person seeking relief to maintain its secrecy...." *See* Cal. Civ. Code § 3426.1(b). Under the CUTSA, "improper means" includes theft, misrepresentation, and breach of a duty to maintain secrecy. *See* Cal. Civ. Code § 3426.1(a).

From Brunswick's initial investigation, it is already clear that Defendants misappropriated Brunswick's trade secrets in violation of the CUTSA and of Ostling's duty of loyalty. As discussed in Section III.A.3. (*supra*), Sultanov knew or had reason to know that he had acquired Brunswick's trade secrets by improper means when he transmitted them to his personal email account and refused to return the company-issued cell phone and laptop. Ostling used improper means to obtain Brunswick's trade secrets. Even after his resignation as CEO in mid-November, Ostling, instead of returning the trade secrets, continued to communicate with Brunswick's employees, obtained such secrets and shared them with representatives of Brunswick's creditors. *See SolarBridge Techs., Inc. v. Ozkaynak*, No. C 10-cv-03769-EJD, 2012 U.S. Dist. LEXIS 81403, at *14 (N.D. Cal. June 12, 2012) (finding improper use of trade secret when defendant

1    sent an email to plaintiff's competitors, attaching confidential information). All of these acts

2    were taken contrary to numerous internal agreements and policies protecting trade secrets and

3    confidential information. Thus, there is a strong likelihood of success in demonstrating that

4    Defendants misappropriated Brunswick's trade secrets in violation of the CUTSA.

### 3.    Brunswick Is Likely To Succeed On The Merits Of Breach Of Fiduciary Duty And Duty Of Loyalty

7    As employees and officers of Brunswick, Defendants owed Brunswick a duty of loyalty

8    and was obligated to act with the utmost good faith, and in the best interest of Brunswick.

9    Specifically, Sultanov agreed to maintain a "[r]esponsible attitude for the property of the

10    Employer," and that he "cherish credibility and the reputation of the Employer." Naumova Decl.,

11    ¶ 9. Ostling agreed to "use [his] best endeavours [*sic*] to promote the interests of" Brunswick in

12    his employment contract. *Id.* ¶ 6. In general, a corporate officers have a fiduciary duty to their

13    companies. "It is without dispute that executives and officers of a corporation owe a fiduciary

14    duty to the corporation under California law." *Music Grp. Macao Commer. Offshore, Ltd. v.*

15    *Foote*, No. 14-cv-03078-JSC, 2015 U.S. Dist. LEXIS 81415, at *67 (N.D. Cal. June 22, 2015)

16    Brunswick was entitled to place its trust and confidence in Defendants and entitled to

17    expect Defendants to act with the utmost good faith toward it in carrying out the employment and

18    the business of Brunswick. Naumova Decl., ¶¶ 6-11. Brunswick relied on Defendants' loyalty

19    and integrity and their faithful performance of their responsibilities. *Id.* Defendants took

20    advantage of Brunswick's faith in them—thereby breaching their fiduciary duties—by failing to

21    perform their duties to Brunswick, by acting in conflict of interest, by engaging in activities for

22    their own benefit and to the detriment of the company, and by providing secret information and

23    interacting with for Brunswick's creditors with which Brunswick was and is negotiating as part of

24    the Brunswick Restructuring. *Id.* Defendants knowingly and willingly breached their duty of

25    loyalty to Brunswick by misappropriating its confidential and trade secret documents and

26    information, and engaging in acts that undermine Brunswick's negotiation position with its

27    creditors or otherwise jeopardize that process, and which expose Brunswick's trade secrets to risk

28    from multiple sources. *Id.* As a direct and proximate cause of Defendants' disloyalty to

1  Brunswick and breach of their duties, Brunswick has been and is being harmed, and faces severe
2  risk of irreparable harm.

3  **4.     Brunswick Is Likely To Succeed On The Merits Of Breach Of Written Contract**
4

5  Given the substantial evidence already described, there can be little doubt that Brunswick

6  will also succeed on its breach of contract claim against Sultanov.  To prove a breach of contract

7  claim, Brunswick must show the existence of a contract, its terms establishing the obligations at

8  issue, the breach of those obligations, and resulting damages. *See FPI Dev., Inc., v. Nakashima*,

9  231 Cal. App. 3d 367, 383 (1991).  Express confidentiality provisions, such as those in this case,

10 are valid and enforceable in California, and a breach of such agreement may be pursued through a

11 common law breach of contract claim.  *See, e.g., Oculus Innovative Scis., Inc. v. Nofil Corp.*, No.

12 C 06-1686-SI, 2007 WL 4044867, at *3 (N.D. Cal. Nov. 15, 2007).

13 Under his Employment Agreement, Sultanov was obligated to, *inter alia*: (a) to hold in

14 strict confident and not to disclose Brunswick's confidential and trade secret information outside

15 of Brunswick without its approval; (b) comply with the Brunswick's internal code of conduct; (c)

16 act responsibly for Brunswick's property; (d) return all Brunswick property and all confidential

17 and trade secret documents and information to Brunswick upon first request; and (e) not to

18 transfer Brunswick's confidential and trade secret documents and information to email that did

19 not belong to Brunswick.  Naumova Decl. ¶¶ 9-10, Exs. 2-5.

20 Sultanov breached his contractual obligations by disclosing Brunswick's confidential and

21 trade secret information to Ostling and to certain Brunswick creditors.  *Id.*  Sultanov also

22 breached his contractual duties by transferring Brunswick's confidential and trade secret

23 information from his Brunswick email account to his personal Gmail account without

24 Brunswick's approval.  *Id.* Further, Sultanov breached his contractual duties by failing to return

25 his Brunswick mobile phone and laptop, the Brunswick confidential, and trade secret information

26 despite Brunswick's requests.  Sultanov continues to refuse to return the phone to Brunswick.  *Id.*

27 Further, Sultanov breached his contractual obligations by failing to follow Brunswick's

28 internal code of conduct.  Critically, his misappropriation of Brunswick's confidential and trade

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

secret documents and information, failure to comply with explicit instructions, and interference with an internal investigation are inconsistent with Brunswick's internal code of conduct. *Id.*

### 5. Brunswick Is Likely To Succeed On The Merits Of Breach Of Implied Covenant Of Good Faith And Fair Dealing

Sultanov's Employment Agreement contained an implied covenant of good faith and fair dealing (the "implied covenant") that obligated him to refrain from doing anything that would deprive Brunswick from the benefits of the agreement or that would impede Brunswick from performing any or all of the conditions of the agreement that it agreed to perform. Sultanov's misconduct in transmitting trade secrets without authorization, using that information to sabotage Brunswick in the Brunswick Restructuring, and creating risk of disclosure to many other parties which could injure Brunswick, are breaches of the implied covenant. Sultanov not only failed to protect the secrecy of Brunswick's confidential and trade secret documents, he purposefully sent them to his personal email with the intent to act contrary to Brunswick's interests.

### 6. Brunswick Is Likely To Succeed On The Merits Of Unfair Competition Under Cal. Bus. & Prof. Code §17200

The UCL provides a private right of action for any injury caused by unfair or unlawful business practices. *See generally* Cal. Bus. & Prof. Code §§ 17200 et seq.; *Courtesy Temp. Serv., Inc. v Camacho*, 222 Cal. App. 3d 1278, 1291 (1990) (court found that former employee violated the UCL by stealing the plaintiff's confidential information and then using that information to disrupt plaintiff's advantageous business relations). By obtaining Brunswick's confidential and proprietary material without its authorization or consent and disclosing the material and information, exposing that information to the risk of disclosure to creditors, adverse parties to an arbitration and competitors, and having actually disclosed some such information already to Brunswick's creditors, Defendants have competed unfairly. Through their actions, Defendants have compromised the confidentiality of Brunswick's trade secrets, undermined Brunswick's place in the market, and has caused Brunswick to incur costs and damage. Among other things, Defendants risk giving Brunswick's creditors an unfair advantage in negotiations during the Brunswick Restructuring. Defendants, moreover, have simultaneously compromised Brunswick's opportunity to benefit from its ingenuity and efforts as embodied in its confidential

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1 | and trade secret documents and information.

2 | **D.** **Pursuant To The All Writs Act (28 U.S.C. § 1651(A))The Court May Order Third-Party Email Providers To Make A Copy Of The Entirety Of The Contents Of The Email Account**

4 | Brunswick's Proposed Order directs that third-party email providers make copies of the

5 | entirety of Sultanov's personal Gmail account and Ostling's Rackspace account in aid of the

6 | foregoing orders and to ensure the preservation of evidence necessary to investigate Defendant's

7 | misappropriation of trade secrets in this action. Critically, these third-parties are the only entities

8 | that can effectively ensure the preservation of evidence found in Defendants' email accounts.

9 | The All Writs Act provides that a court may issue all writs necessary or appropriate for

10 | the administration of justice. 28 U.S.C. § 1651(a). The Supreme Court has recognized that

11 | narrow direction to third-parties necessary to effect the implementation of a court order is

12 | authorized by the All Writs Act:

> The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice.

16 | *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (citations omitted) (order to

17 | telephone company to assist in implementation of pen register warrant was authorized under All

18 | Writs Act); *In re Application of United States for an Order Authorizing An In-Progress Trace of*

19 | *Wire*, 616 F.2d 1122, 1129 (9th Cir. 1980) (same; noting of *New York Tel. Co.*, "the Court made

20 | the commonsense observation that, without the participation of the telephone company, 'there is

21 | no conceivable way in which the surveillance authorized could have been successfully

22 | accomplished.'"); *In re Baldwin-United Corp.*, 770 F.2d 328, 338-339 (2d Cir. 1985) ("An

23 | important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties to an

24 | action when needed to preserve the court's ability to reach or enforce its decision in a case over

25 | which it has proper jurisdiction"; "We do not believe that Rule 65 was intended to impose such a

26 | limit on the court's authority provided by the All-Writs Act to protect its ability to render a

27 | binding judgment."); *Dell Inc. v. BelgiumDomains, LLC*, No. 07-22674, 2007 U.S. Dist. LEXIS

28 | 98676 (S.D. Fla. Nov. 20, 2007) (All Writs Act applied in conjunction with trademark seizure

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO, SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    under Rule 65 and Lanham Act).

2        Here, unless third parties Google, Inc., Rackspace Hosting, Inc. and/or Rackspace US,

3    Inc. are directed to make and provide into the custody of the court copies of the material at

4    issue, irreparable harm is likely to result to Plaintiffs' from the risk of destruction of evidence,

5    attempted evasion of the Court's jurisdiction, and resultant impairment of Plaintiffs' ability to

6    promptly mitigate the injury caused by Defendants' disclosure and use of trade secrets.

7    Accordingly, narrowly tailored directions are necessary to prevent frustration or thwarting

8    implementation of the Court's orders to the Defendants.  Here, the third-parties control the

9    infrastructure containing the trade secret material at issue and are in a position to reduce the risk

10   of frustration of implementation of the order.  Without their reasonable assistance, there is no

11   way in which the relief, directed at Defendants' acts and property, can be ensured to be

12   successfully effected.  Thus, the reasonable assistance of the third parties in preparing copies of

13   the material at issue and providing that into the custody of the Court, to prevent irreparable

14   harm, to aid in the Court's exercise of its jurisdiction and to preserve critical evidence, is

15   necessary and appropriate.   Such direction to third parties is consistent with Due Process.  *See*

16   *e.g. Mathews v. Eldridge*, 424 U.S. 319 (1976) (prior notice and hearing are not always required

17   to satisfy due process; evidentiary hearing held after withholding of social security benefits

18   satisfied due process); *Goichman v. Rheuban Motors, Inc.* 682 F.2d 1320 (9th Cir. 1982)

19   (hearing held shortly after car was towed satisfied due process).  Here, requiring the third-

20   parties to provide minimal assistance in executing the order would not violate due process.  The

21   third-parties are not being deprived of any tangible or significant property interest.  The

22   Proposed Order requires only minimal assistance from the third-parties (likely on the order of

23   hours), and requires Plaintiffs to compensate the third-parties for the assistance rendered.

24   Further, this order requires that its terms be implemented with the least degree of interference

25   with the normal operation of the third-parties.  In the absence of such third-party assistance,

26   there is a serious risk of irreparable harm to Plaintiffs.

27       **E.    *Ex Parte* Relief Is Proper**

28       Rule 65 of the Federal Rules of Civil Procedure permits *ex parte* injunctive relief where

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY, AND ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION

1    the moving party sets forth facts that show an immediate and irreparable injury and why notice

2    should not be required. Fed. R. Civ. P. 65(b)(1); *see Granny Goose Foods, Inc. v. Brotherhood*

3    *of Teamsters & Auto Truck Drivers, Local No. 70*, 415 U.S. 423, 438-39 (1974) ("*Ex parte*

4    temporary restraining orders are no doubt necessary in certain circumstances. . . ."). It is well

5    established that *ex parte* relief is appropriate under circumstances such as the instant case, where

6    notice would render the requested relief ineffective. *Ice Consulting Inc. v. Jensen*, No. 16-CV-

7    04349, Dkt. No. 19 (N.D. Cal. Aug. 8, 2016) (granting *ex parte* TRO under DTSA finding that

8    defendant could depart country in possession of plaintiff's trade secrets); *Crosby v. Petromed,*

9    *Inc.*, 2:09-cv-05055-EFS, 2009 U.S. Dist. LEXIS 73419, at *5 (E.D. Wash. Aug. 6, 2009)

10   (granting *ex parte* TRO as "notice to Defendants of this TRO request could result in further

11   injury or damage to Plaintiffs...."); *Microsoft Corporation v. John Does 1-2*, No. 2:11-cv-00222,

12   Dkt. No. 19 (E.D. Wa. Mar. 9, 2011), (granting *ex parte* TRO where notice of action would

13   render injunction against computer-based misconduct ineffective).

14        Without *ex parte* injunctive relief in this case, Defendants would indeed delete all

15   incriminating emails from their personal account before Gmail or Rackspace had the

16   opportunity to make copies of the contents of Defendants' emails or before Brunswick had an

17   opportunity to discover this information in the ordinary course. Considering Sultanov's past

18   attempt to destroy evidence linking him to the misappropriation of trade secrets, and based on

19   Ostling's continued unauthorized receipt of confidential information from the company there is

20   a risk that Defendants would not preserve evidence as required, if given the opportunity.

21   **IV.   CONCLUSION**

22        For the foregoing reasons, Brunswick respectfully requests that the Court grant the instant

23   application for a TRO, Seizure Order, Evidence Preservation Order, Expedited and Order to

24   Show Cause why a Preliminary Injunction should not issue.

25   Dated: January 3, 2017                                 ORRICK, HERRINGTON & SUTCLIFFE LLP

26

27                                                                  GABRIEL M. RAMSEY
                                                                    Attorneys for Plaintiffs OOO Brunswick Rail
28                                                                  Management and Brunswick Rail Group Limited

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25          BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TRO,
            SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
            DISCOVERY, AND ORDER TO SHOW CAUSE RE
            PRELIMINARY INJUNCTION