1  GABRIEL M. RAMSEY (STATE BAR NO. 209218)
   gramsey@orrick.com
2  JACOB M. HEATH (STATE BAR NO. 238959)
   jheath@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   405 Howard Street
4  San Francisco, CA 94105
   Telephone:   +1-415-773-5700
5  Facsimile:   +1-415-773-5759

6  MICHAEL C. TU (STATE BAR NO. 186793)
   mtu@orrick.com
7  ORRICK, HERRINGTON & SUTCLIFFE LLP
   777 South Figueroa Street, Suite 3200
8  Los Angeles, CA 90017
   Telephone:   +1-213-629-2020
9  Facsimile:   +1-213-612-2433

10 Attorneys for Plaintiffs
   OOO Brunswick Rail Management and
11 Brunswick Rail Group Limited

12

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15                          SAN JOSE DIVISION

16
   OOO BRUNSWICK RAIL MANAGEMENT,          Case No. CV 1700017 NC
17 a Russian limited liability company, and
   BRUNSWICK RAIL GROUP LIMITED, a         DECLARATION OF ELENA
18 Bermuda company,                        NAUMOVA IN SUPPORT OF
                                           PLAINTIFFS' *EX PARTE*
19              Plaintiffs,                APPLICATION FOR TEMPORARY
                                           RESTRAINING ORDER, SEIZURE
20      v.                                 ORDER, EVIDENCE
                                           PRESERVATION AND EXPEDITED
21 RICHARD SULTANOV and PAUL               DISCOVERY, AND ORDER TO
   OSTLING, individuals,                   SHOW CAUSE RE PRELIMINARY
22                                         INJUNCTION
                Defendants.
23

24

25            **REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

26

27

28

ORRICK, HERRINGTON &
   SUTCLIFFE LLP
   ATTORNEYS AT LAW
   SAN FRANCISCO

                                        DECLARATION OF ELENA NAUMOVA IN SUPPORT OF
                                        TRO, SEIZURE ORDER, EVIDENCE PRESERVATION,
                                        EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

I, Elena Naumova, declare as follows:

1. I am the General Counsel of OOO Brunswick Rail Management ("BRM"), a Russian Limited Liability company and a subsidiary of Brunswick Rail Group Limited ("BRL") (collectively referred herein as "Brunswick" or "Plaintiff"). I have been employed with BRM since January 2006. My responsibilities include counseling the Company on legal matters. I have personal knowledge of the facts set forth herein, or where indicated below, I believe those facts to be true based upon my own personal knowledge, on information in the possession of Brunswick, and/or information provided to me by others. As to these facts, I could and would competently testify under oath if called as a witness.

2. I submit this declaration in support of Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order, Seizure Order, Evidence Preservation and Expedited Discovery, and Order to Show Cause Re Preliminary Injunction (the "Application"). As discussed in this declaration, each of Defendants Paul J. Ostling ("Ostling") and Richard Sultanov ("Sultanov") (collectively "Defendants") misappropriated Brunswick confidential, proprietary, and trade secret documents and information. The misappropriated information includes confidential and trade secret information regarding Brunswick's restructuring of significant credit facilities, its arbitration against its former CEO Alex Genin ("Genin"), its internal employment affairs and commercial information regarding customers. To stop, contain and correct the immediate harm, Brunswick requests a court order preserving evidence, and ultimately providing access to emails and other information regarding Defendants' respective activities, including any improper communication with creditors, the company's former CEO Genin or other third parties, and other harmful acts, and a court order for Defendants to cease their harmful activities.

### BRUNSWICK AND DEFENDANTS

3. Brunswick Rail is a private railcar lessor providing freight railcars to large corporate clients in Russia. Established in 2004, Brunswick Rail currently owns a fleet of over 25,000 railcars (as of September 30, 2016), which represents approximately 2% of the total Russian railcar fleet. Brunswick shareholders are well known international financial institutions and individuals: IFC, EBRD, UFG, MRIF, VTB, Sumitomo, Martin Andersson, Gerard DeGeer

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF
TRO, SEIZURE ORDER, EVIDENCE PRESERVATION,
EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

and others. BRM is a Russian Limited Liability Company, headquartered in Moscow in the Russian Federation, and is a subsidiary of BRL. BRL is a Bermuda company, headquartered in Hamilton, Bermuda.

4. In January 2016, Brunswick announced a voluntary restructuring of its debt (hereinafter, the "Brunswick Restructuring"). As part of this restructuring, Brunswick is in ongoing, sensitive discussions and negotiations with its creditors. The restructuring is a significant undertaking and, among other things, involves a $600 million bond that is critical to Brunswick's business and operations. A successful restructuring is key to maintaining Brunswick's solvency and ultimately its competitive advantage in the industry.

5. In May 2016, Brunswick commenced confidential arbitration proceedings (hereinafter, the "Brunswick Arbitration") against its former CEO Genin, who served in the role prior to Ostling and another earlier CEO. It is critical to Brunswick that the arbitration remain confidential. The substance of the arbitration is highly sensitive and various types of injury could occur if internal information about its approach to the arbitration were shared, for example, with former CEO Genin who is party to the arbitration, creditors or other third parties.

6. I am informed that Ostling is a citizen of the United States and that he resides in Connecticut and possibly other locations in the United States. I am informed that he also maintains a residence in Moscow, Russian Federation at Trekhprudnyy pereulok 11/13, apartment 9, 123001 Moscow. Brunswick hired Ostling in June 2012 as Chairman of the Board. In September, 2015, Brunswick named Ostling as interim chief executive officer ("CEO") of Brunswick. Attached as **Exhibit 1** is a true and correct copy of Ostling's employment agreement. Under the confidentiality provisions of his employment agreement, Ostling agreed to:

> not except as authorized or required by your duties hereunder use for your own benefit and gain or reveal to any person, firm, company or other organization whatsoever, any trade secrets or Confidential Information bellowing to the Employer or to any other member of the Group or relating to the affairs or dealings of the Group which may come to your knowledge during your employment. You shall treat the same with complete secrecy.

As CEO, Ostling owed Brunswick a fiduciary duty of care and loyalty, obligating him to "use

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF TRO, SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

[his] best endeavours [*sic*] to promote the interest" of Brunswick, as memorialized in his employment agreement.

7. Pursuant to the terms of his employment, Ostling signed and agreed to the terms of Brunswick's internal confidentiality policy. He was also subject to the internal IT use policy and internal information security policy. These policies prohibited sending confidential, internal information to parties email addresses outside of Brunswick. Attached as **Exhibits 2, 3** and **4** are true and correct copies of these policies. In particular, section 4.5.3 of the information security policy, at **Exhibit 4**, provides that "the use of email boxes not belonging to the Company for the transfer of corporate information is prohibited."

8. Ostling remained as CEO of BRM/BRL until November 13, 2016 when BRM/BRL's Board of Director accepted his resignation. I am informed that Ostling is currently serving as an investor in a company called Psinos, and may hold board seats in other companies as well.

9. I am informed that Sultanov is a dual citizen of the United States and the Russian Federation. I am informed that he resides in Moscow, Russian Federation at Ozerkovskaya Naberezhnaya 2, building 1, apartment 135, 115184 Moscow. I am informed that he also maintains a residence in Monterey, California. BRM hired Sultanov in July 2014 as Director of Strategic Marketing, Development & Communications. Sultanov reported to me. He also became the assistant to General Director and to the CEO in November 2015. He was in charge of market data and research. He had access to confidential information and the company's position regarding restructuring its obligations, the arbitration against former CEO Genin and confidential customer information. Attached as **Exhibit 5** is a true and correct copy of Sultanov's employment agreement. Under the terms of his employment agreement, Sultanov agreed

> not to disclose to third parties or use without the consent of the Employer, [any] confidential information or information containing commercial secrets, the access to which was obtained by the Employee during the period of work for the Employer.

Sultanov's employment agreement also required "[c]ompliance with the requirements of the internal code of conduct…," that he act with a "[r]esponsible attitude for the property of the

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF TRO, SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

Employer," and that he "cherish credibility and the reputation of the Employer." Sultanov's employment agreement further required that "[a]ll such information is confidential and must remain the exclusive property of the Employer and must be returned ... upon first request."

10. Pursuant to the terms of his employment, Sultanov also signed and agreed to the terms of a number of Brunswick's internal policies, including the confidentiality policy, internal IT use policy, and internal information security policy. These policies prohibited sending confidential, internal information to parties' email addresses outside of Brunswick. Attached as **Exhibits 2, 3** and **4** are true and correct copies of these policies. In particular, section 4.5.3 of the information security policy, at **Exhibit 4,** provides that "the use of email boxes not belonging to the Company for the transfer of corporate information is prohibited."

11. As Director of Strategic Marketing, Development & Communications, Sultanov had access to Brunswick proprietary, confidential, and trade secret documents and information, including management materials prepared for Brunswick's Board of Directors ("Board"), attorney-client communications and attorney work product from Brunswick's outside counsel, material regarding negotiations of customer contracts, and information relating to Brunswick's restructuring. Brunswick suspended Sultanov on December 12, 2016 following commencement of an investigation that revealed Sultanov's misappropriation of Brunswick's trade secrets and confidential information and his breach of his employment agreement and internal policies.

**BRUNSWICK'S TRADE SECRET AND CONFIDENTIAL INFORMATION**

12. Brunswick takes extraordinary steps to protect its confidential, proprietary, and trade secret documents and information. Brunswick limits access to sensitive confidential information and trade secrets. Brunswick employees are able to gain access to Brunswick confidential information only through password-protected programs and entry points. Brunswick secures access to its facilities and employs other security measures that limit and control access to its confidential information and trade secrets. Brunswick takes security measures, including locking its doors and activating an alarm system after business hours and having security guards, and all activities are recorded on cameras. During business hours, members of the public are not allowed into the companies' facilities unless they have an appointment or otherwise escorted by a

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF TRO, SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

Brunswick employee. Employees are expected to treat sensitive documents—including material related to the Brunswick restructuring, its arbitration against former CEO Genin, documents and information regarding internal employment matters, and confidential information regarding customers—as per internal policies and agreements. Employees can only access Brunswick computers and peripheral devices with the proper user ID and passwords.

13. For example, section 4.7 of Brunswick's information security policy, at **Exhibit 4**, indicates that

> The Company introduced Access Monitoring and Control System to office premises. Special equipment that includes Proximity card readers, cards and SW that provides for the maintenance of the employee database and their access to offices is used to control doors to offices.
>
> A CCTV system is organised in the Moscow office that provides for storage of recorded video information on a hard drive. The main purpose of the system is to facilitate the investigation in the event of an emergency situation in the office. The owner of the video information is the General Director.

14. Brunswick enforces the protection of its confidential, proprietary and trade secret documents and information, through confidentiality provisions in employment agreements, and detailed and strict internal policies on confidentiality, information security and IT use, as reflected in **Exhibits 2, 3** and **4**. For example, Brunswick's information security policy, at **Exhibit 4**, creates a framework for preventing information security vulnerabilities, managing user accounts and passwords, and protecting confidential corporate information within the company's information systems. At section 4, the policy makes clear that: "Information - is a critically important asset to the Company, which must be protected from unauthorised access, intentional or deliberate deletion or amendment." At section 4.5.1, the policy prohibits establishing any unauthorized "external connections" to Brunswick systems or information, and provides that "[i]the event of non-compliance with this rule, the user will be fully responsible for the consequences of his actions." Section 4.5.3 provides, among other things, that "[t]he use of email boxes not belonging to the Company for the transfer of corporate information is prohibited," that "access to the Internet network and collaborative tools provided for CIS users may be used only in accordance with the Company's business objectives," and that "[i]f confidential or proprietary

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF
TRO, SEIZURE ORDER, EVIDENCE PRESERVATION,
EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

information of the company must be sent using collaborative tools (e-mail, electronic conference, etc.), it must be encrypted so that it can be read only by the person it was targeted for. Such information is encrypted using the software and algorithms approved by the company."

15. Brunswick continuously updates and maintains the digital and physical security and confidentiality of its information. For example, at section 4.8 of the information security policy, Brunswick provides that "[t]he following technical measures are used to control risks: monitoring, system logs analysis, regular inspections, analysis on the side of the management and independent internal audits of information security." and "[a]ctivities for the optimisation of risk includes a regular reassessment of risks and, accordingly, reassessment of policies, risk management, adjustment and updates of information security mechanisms."

16. Brunswick derives value from the secret nature of its confidential and trade secret documents and information. Brunswick does not freely share its confidential material or trade secrets with any entity or person outside of Brunswick. Brunswick requires all of its employees and consultants to sign employment agreements that include confidentiality, non-disclosure, and non-use provisions that acknowledge its employees and consultants will receive confidential and proprietary documents and information during their employment that belongs to Brunswick. As discussed, Defendants entered into such agreements.

17. Brunswick's confidentiality provisions define its proprietary and confidential material broadly and prohibit, among other things, its employees and consultants from disclosing Brunswick confidential and proprietary material from anyone outside of Brunswick without its consent or otherwise misappropriating Brunswick's confidential and proprietary material. These agreements signed by Brunswick's employees establish a contractual duty to Brunswick not to disclose, use, or retain Brunswick's confidential or proprietary information without Brunswick's authorization. Brunswick's trade secrets and confidential documents and information, subject to its confidentiality restrictions and protections, include: board materials, minutes of board meetings, legal counsels' opinions, confidential letters from counsel for certain of the creditors and Plaintiff's responses, internal decision-making and strategy concerning the restructuring and negotiations, internal decision-making and strategy concerning the arbitration with former CEO

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF
TRO, SEIZURE ORDER, EVIDENCE PRESERVATION,
EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

Genin, Credit Committee materials, Compensation Committee materials, valuation reports by consultants, internal emails regarding ongoing negotiations with clients and documents concerning internal employment matters.

### DEFENDANTS' MISCONDUCT

18.     Unbeknownst to Brunswick, from at least mid-November 2016 through December 15, 2016, Sultanov has misappropriated Brunswick's confidential and trade secret documents, by transferring them out of the company to his own personal account. Based on the substance and timing of the documents and information that Sultanov has misappropriated, I conclude that it is likely that he has done so in order to provide certain creditors of Brunswick or others with an interest in the outcome of the Brunswick Restructuring, with a material advantage in the restructuring, and/or to assist Brunswick's former CEO Genin in the arbitration between him and Brunswick and/or to assist competitors of Brunswick.

19.     Unusual events concerning Sultanov and Ostling began to occur in mid-November 2016, right around the time Ostling tendered his resignation. Brunswick accepted Ostling's resignation on November 13, 2016. Shortly before resigning, Ostling asked Brunswick to give Sultanov a special $10,000 bonus. Brunswick later discovered that Sultanov had been obtaining approval from Ostling for an inordinate amount of overtime, which accumulated to nearly 40 percent additional pay over during 2016. This was all unusual, given the financial condition of Brunswick and the timing of Ostling's bonus request in relation to his departure.

20.     After Ostling left Brunswick in November 2016, Sultanov used and shared confidential and trade secret information. In particular, Sultanov transmitted outside of the company information regarding the Brunswick Restructuring and Brunswick Arbitration. Right around mid-November 2016, Sultanov began exhibiting behavior that was unusually secretive. Sultanov often would leave the floor where he works, move one floor up, and take and make numerous calls. This behavior was out of the ordinary. At that time, Sultanov also came to work on the weekends repeatedly, at a time when he had no reason to be there. At this time, Sultanov began asking numerous and detailed questions regarding the restructuring and negotiations with bondholders, even though he was not working on such matters and they were entirely outside of

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF
TRO, SEIZURE ORDER, EVIDENCE PRESERVATION,
EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

the job scope.

21. During this same period of time—and particularly during the last few weeks in December 2016, Brunswick began receiving multiple letters from its creditors with which it was negotiating. These letters appeared to be coordinated and not coincidental. In view of the foregoing developments, on December 9, 2016, Brunswick exercised its rights consistent with internal IT policy, to which Sultanov had agreed, and accessed his Brunswick email account to investigate. Critically, we noticed a dramatic increase in the amount of information Sultanov was sending from Brunswick email account (rsultanov@brunswickrail.com) to his personal Gmail email account (richard.sultanov@gmail.com). This activity was prohibited by Brunswick's policies. There was no record with Brunswick's IT department of Sultanov having complained of trouble with his Brunswick computer, a request to work more regularly from home, or some other rationale for the dramatic increase of forwarded email to Sultanov's Gmail account. In fact, Sultanov could use the company issued laptop to access his work email account or documents, like other employees did, and like he did in the past. There was no reason that he should have sent any information to his personal email account.

22. Upon reviewing the email account, Brunswick discovered that since November 12, 2016, Sultanov had been sending a very large number of trade secret and confidential documents from his work email account to his personal Gmail account. These emails contain trade secret and confidential documents relating to a number of internal matters, including the Brunswick Restructuring and Brunswick Arbitration. A number of the documents are specifically marked "strictly confidential." This information includes:

- Internal decision-making and strategy concerning the restructuring and negotiations, forwarded to Sultanov's private email account on December 9, 2016, emails relating interactions with creditors "Lavender Tankers" and "Sumitomo," and internal information and communications relating to the restructuring;
- Board materials, board minutes and presentations of advisors for the board, forwarded to Sultanov's private email account on December 6, 2016, including particularly very recent materials from the end of November and beginning of

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF
TRO, SEIZURE ORDER, EVIDENCE PRESERVATION,
EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

December. Internal drafts of communications with creditors were also sent.

- Legal counsels' opinions and confidential letters from counsel for certain of the creditors and Plaintiff's responses, forwarded to Sultanov's private email account on December 7, 2016.
- Internal information concerning the arbitration with Brunswick's former CEO Genin, forwarded to Sultanov's private email account on December 7, 2016.
- Credit Committee materials, forwarded to Sultanov's private email account on December 6 and 10, 2016 in emails containing information about decision making, strategy and the contents of December meetings and minutes.
- Compensation Committee materials, forwarded to Sultanov's private email account on December 5-6, 2016.
- Valuation reports by E&Y, forwarded to Sultanov's private email account on December 6, 2016.

(hereinafter, "Brunswick Confidential Information").

23. To be clear, the current management of Brunswick did not authorize Sultanov to send these materials to his personal Gmail account. His actions were unauthorized and inconsistent with his obligations under his employment agreement and his duties to the company. By sending these materials to his personal Gmail account, Sultanov also violated the Brunswick internal IT security policy. The materials that Sultanov forwarded to his personal account were beyond the scope of his duties and not necessary to perform his job functions. There was no legitimate purpose for Sultanov to send the materials to his personal Gmail account.

24. Our investigation also revealed a deliberate effort by Sultanov to conceal the unauthorized transmission of Brunswick's confidential and trade secret information to his personal Gmail account. On December 10, 2016, Sultanov delated many of the emails he had forwarded to his personal Gmail account. Sultanov also emptied his "trash" folder of his Brunswick email account. Brunswick, however, was able to recover these deleted emails. Our investigation revealed that Sultanov deleted numerous emails he forwarded to his personal Gmail account. Those deleted emails include emails that forwarded Brunswick Confidential

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF TRO, SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

Information and depending on timing potentially price sensitive information.

25. As part of our investigation, Brunswick also reviewed Sultanov's phone records. Given the ongoing, sensitive negotiations with its creditors, Brunswick instructed Sultanov not to communicate to creditors or to anyone outside of the company who may relate to the ongoing negotiations, without prior approval from his supervisors. Sultanov disobeyed Brunswick's instructions. Sultanov's phone records from his work telephone reveal that from November 12, 2016 through December 12, 2016, Sultanov had phone multiple conversations with (a) Ostling, after his resignation from Brunswick and with (b) Denis Mosolov ("Mosolov"), a representative of one of the creditors which is a contractual counterparty to Brunswick. Separately, during this same period, Brunswick began receiving communications from creditors that were inexplicably coordinated, compared to prior communications. For example, on December 6, 2016, Brunswick received a letter from yet a different creditor than that represented by Mosolov, and on December 7, 2016, received an apparently coordinated letter from counsel for a group of creditors. The receipt of these letters all appeared coordinated.

26. Given these discoveries, Brunswick began an internal investigation into whether Sultanov may have communicated confidential and price-sensitive information to third parties, particularly, the creditors with whom the company is negotiating. On December 12, 2016, Brunswick interviewed Sultanov. I attended that interview, along with Nicolas Pascault (the current CEO) and Victor Koshkin (a General Director). During the interview Sultanov admitted that he had sent, to his personal Gmail account, confidential information that did not pertain to his duties. Sultanov could not provide a clear explanation for his actions. Sultanov denied that conversations with Mosolov, the creditor's representative, despite the phone records showing that they spoke twice on December 6, 2016. When we asked Sultanov to explain the purpose of the calls and to provide the specifics of the information that he had sent to his private account, Sultanov refused to continue the discussion and left the interview. We asked Sultanov to return for a follow up interview and further discussion; he refused to do so and did not return to the office. We also asked Sultanov to return his Brunswick mobile phone and laptop; he refused to do so.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF TRO, SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

27. Given the results of our internal ongoing investigation and Sultanov's violations of his employment agreement and the Brunswick information security policy, IT use policy and confidential information policy, Brunswick suspended Sultanov's employment effective December 12, 2016. Brunswick has denied Sultanov access to the office, use of services through his Brunswick-issued mobile phone and laptop in his possession, and his Brunswick email account. Brunswick has also instructed Sultanov not to communicate with other Brunswick employees without management's approval. Moreover, Brunswick has repeatedly requested that Sultanov return his Brunswick-issued mobile phone and laptop, which he has confirmed is in his possession, and as he is required to do under his employment agreement. However, he refuses to do so.

28. Sultanov's suspension did not dissuade him from continuing to engage in conduct that injures Brunswick's interests and is designed to avoid the facts relating to the instant dispute from coming to light. On December 16, 2016, through a communication to Brunswick's outside counsel in the United Kingdom by Ostling, Sultanov threatened to complain to regulatory authorities unless Brunswick dropped its investigation of Sultanov's conduct. Sultanov's threat is entirely baseless.

29. Ostling has also separately misappropriated confidential, proprietary and trade secret information. Notwithstanding his resignation as CEO in mid-November, after the end of his employment Ostling has communicated with Brunswick's employees, obtained confidential information from them, and shared that information with representatives of Brunswick's creditors. I attended an interview with Ostling's former secretary, who indicated that Ostling continues to ask her to carry out tasks for him, despite the fact that he resigned from the company in mid-November. Specifically, on December 13, 2016, Ostling received from his former secretary at the company, to his personal email account (paul.ostling@pauljostling.com), three emails containing the internal notice regarding Sultanov's suspension and internal details regarding that suspension. They were sent from her personal account and she was not supposed to have access to the information. On December 14, 2016, Ostling forwarded each of these confidential emails to Mosolov, the representative of MRIF, one of the creditors with which

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF
TRO, SEIZURE ORDER, EVIDENCE PRESERVATION,
EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

Plaintiffs are negotiating, and to Sultanov. Ostling copied both of these individuals on the same forwarded emails. Since Sultanov's suspension, Ostling also called Aaron Ruben, another representative of Plaintiffs' creditor, MRIF, and Dominik Dolenec, one of Plaintiffs' former restructuring consultants. Ostling's call to Aaron Ruben was on behalf of Sultanov.

30. Further, I understand that since his suspension, Sultanov has been assisting Ostling in managing his investment in the new company in which he is involved, Psinos. It is my understanding from the interview of Ostling's former secretary that Sultanov joined this new company of Ostling even before his suspension. It appears that Sultanov has been assisting Ostling with work at this other company while employed by Plaintiffs. In particular, Sultanov's company email account has received and continues to receive meeting requests with respect to Psinos. Notably, in paragraph 8 of Sultanov's employment agreement, he is prohibited from entering into an agreement to perform duties similar to his job at Brunswick without notifying Brunswick. There was no such notification and Brunswick has not approved of this activity.

### INJURY TO BRUNSWICK AND BRUNSWICK'S NEED FOR IMMEDIATE RELIEF

31. The information that Sultanov sent to his personal email account contains a wide variety of confidential information that would be of interest to numerous parties, including the creditors involved in the Brunswick Restructuring, Brunswick's former CEO Genin adverse to the company in the Brunswick Arbitration, and commercial information that would be of interest to competitors. Given the nature of the information that Sultanov sent to his personal account, there is a serious and immediate risk that such information is planned to be shared with creditors, former CEO Genin in the arbitration, competitors or others. There is direct evidence of this fact, given that Sultanov had calls with particular creditors, with no legitimate or explained reason for doing so, and then lied to Brunswick about having been in contact with them. If the trade secret and confidential information at issue were shared with creditors, including internal strategy and information about the restructuring and the arbitration, such information is highly likely to inject extreme disruption into the negotiations and creates severe and immediate risk to the success of that effort. The restructuring negotiations are extremely sensitive. If one or more creditors obtained internal materials about Brunswick's strategies and positions, there is a high likelihood

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF
TRO, SEIZURE ORDER, EVIDENCE PRESERVATION,
EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

that the entire negotiations would be jeopardized. The creditors are in an adverse position to each other and there is a severe risk that creditors would not support the restructuring if some of them became aware of sensitive information over others. This is highly likely to cause severe and immediate discord among them, and threaten the entire project. Even the simple disclosure of Brunswick's internal strategies or confidential business matters to creditors, such as privileged details of the company's strategy regarding the arbitration or internal trade secret customer strategies, cause a severe risk some creditors would decide to threaten the overall ability to restructure. At the least, it would cause severe interruption and conflict in the process, which could not be repaired. Thus, Sultanov's actions create a severe and immediate risk of disadvantaging Brunswick by frustrating its ability to negotiate a fair and reasonable restructuring with its creditors, by disclosing its internal strategies. There is a severe and immediate risk that creditors who were to obtain this information from Sultanov would use it to gain an unfair advantage during the Brunswick Restructuring. Such disclosure creates a severe risk of advantaging some creditors over others, and unfairly advantaging parties associated or affiliated with such creditors. There is also a severe and immediate risk that these actions by Sultanov could be inconsistent with the requirements of securities regulations and laws in the jurisdictions in which the company's securities are trading, depending on the timing of the disclosure of the information at issue, as it may be considered to include price-sensitive information. Further, given that confidential customer and strategy information was included in the conduct, there is a severe and immediate risk of unfair competition as well, if competitors were to receive this data. There is also a serious and immediate risk of interference with the Brunswick Arbitration. For example, there is no reason that Sultanov should have forwarded such information to himself. If he were to share that information with former CEO Genin or his counsel, who are adverse in the arbitration, this could be extremely damaging to Brunswick. The sharing of such information with adverse parties, such as former CEO Genin in the arbitration or to competitors is not theoretical. The facts to date show decisively that Sultanov has already been in contact with creditors, who are contractual counterparties, despite instructions and duties not to do so. I conclude that there is a severe and immediate risk that Sultanov is likely to disclose trade secrets

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF TRO, SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

to adverse parties.

32. This harm and risk of harm to Brunswick results directly from Sultanov's misconduct. The threatened disclosure by Sultanov is highly likely to cause injury to Brunswick that cannot be repaired over time by normal means. The restructuring is critical and essential to the existence of the business and the confidential arbitration is very important to the business as well. Sultanov's interference by providing trade secret and confidential information to certain creditors, and interacting with them without management's authorization, risks to severely impair the ability to complete the restructuring and thus creates risk to Brunswick's existence, which could not be repaired. The sharing of this information also creates extreme and immediate unfairness in the restructuring, both for Brunswick and other creditors. Once such damage is done, it would be almost impossible to restore parties to equal position in the negotiating environment. And, as discussed, Sultanov's disclosure of information to an adversary in the arbitration is also clearly the type of severe and immediate injury that could not be repaired. Finally, if sensitive commercial information regarding customers and internal affairs were passed to competitors, it would enable them to unfairly compete against Brunswick, by taking away customers from Brunswick. This too creates a serious risk of harm. The loss of customers would threaten the ongoing attempts at restructuring as well.

33. Similarly, the information that Ostling received at his personal email account from his former secretary is sensitive internal employment information and was, in fact, forwarded by Ostling to a creditor who is a contractual counterparty in the restructuring. Given the sensitivity of the existing restructuring negotiations, the fact that Ostling has received and forwarded confidential internal employment information to creditors indicates a severe and immediate risk regarding the restructuring process and relations similar to those described above. This activity creates a high likelihood of interfering with and damaging the restructuring process, in a manner that cannot be repaired over time by other means.

34. Given Sultanov's and Ostling's attitude and complete disregard for their obligations to Brunswick, given Sultanov's efforts to destroy the evidence of his misappropriation, given Ostling's willingness to obtain information improperly from his prior

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF
TRO, SEIZURE ORDER, EVIDENCE PRESERVATION,
EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

secretary, and given both of their continued possession and access to trade secreted information, there is a high likelihood that Ostling and Sultanov will continue to misappropriate Brunswick's trade secrets, to the detriment of Brunswick's interests and in furtherance of their own interests. For the same reasons, there is also a high risk that Sultanov will continue his efforts to destroy evidence of illicit activity or evade the true facts from coming to light, if he finds out about the relief Brunswick requests. Similarly, given Ostling's exhibition of evasive behavior, by interacting with his former secretary and obtaining confidential information from her, there is a severe risk that he too would not take necessary steps to preserve evidence. If past behavior is any indication of actions in the future, we cannot give Sultanov or Ostling any notice of this action against them until the court has preserved existing evidence in their possession.

35. Accordingly, Brunswick urgently seeks a court order directing: the immediate seizure and preservation of Sultanov's personal Gmail account (richard.sultanov@gmail.com), including any material in related cloud computing services, and any archives, deleted emails, or backups of this material; the immediate seizure and preservation of Ostling's personal email account (paul.ostling@pauljostling.com), including any material in related cloud computing services, and any archives, deleted emails, or backups of this material; the immediate return of the Brunswick mobile phone and laptop provided to Sultanov during his employment; and the immediate restraining of Sultanov and Ostling from the disclosure or use of any Brunswick confidential and trade secret documents and information.

36. The personal and financial details of the employment agreements and the internal corporate policies attached to this declaration are confidential business information of Brunswick. The agreements and policies, as a whole, are not made publicly available and Brunswick does not generally disclose these documents. Disclosure of the documents as a whole in public court filings could harm Brunswick, including providing unfair competitive advantage to competitors, and possibly harm other parties.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF
TRO, SEIZURE ORDER, EVIDENCE PRESERVATION,
EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

1  I declare under penalty of perjury under the laws of the United States of America that the
2  foregoing is true and correct.
3  Executed December 29, 2016 at Moscow, Russian Federation.

*[signature]*
Elena Naumova

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DECLARATION OF ELENA NAUMOVA IN SUPPORT OF TRO,
SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED
DISCOVERY AND PRELIMINARY INJUNCTION