E-filing

ADR

RECEIVED

JAN 04 2017

SUSAN Y. OONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1  GABRIEL M. RAMSEY (STATE BAR NO. 209218)
   gramsey@orrick.com
2  JACOB M. HEATH (STATE BAR NO. 238959)
   jheath@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   405 Howard Street
4  San Francisco, CA 94105
   Telephone:    +1-415-773-5700
5  Facsimile:     +1-415-773-5759

6  MICHAEL C. TU (STATE BAR NO. 186793)
   mtu@orrick.com
7  ORRICK, HERRINGTON & SUTCLIFFE LLP
   777 South Figueroa Street, Suite 3200
8  Los Angeles, CA 90017
   Telephone:    +1-213-629-2020
9  Facsimile:     +1-213-612-2433

10 Attorneys for Plaintiffs
   OOO Brunswick Rail Management and
11 Brunswick Rail Group Limited

12

13                UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                     SAN JOSE DIVISION

16

17 OOO BRUNSWICK RAIL MANAGEMENT,      Case No. **CV 1700017 NC**
   a Russian limited liability company, and
18 BRUNSWICK RAIL GROUP LIMITED, a       **[PROPOSED] ORDER GRANTING
   Bermuda company,                      PLAINTIFFS' *EX PARTE*
                                         APPLICATION FOR TEMPORARY
19            Plaintiffs,                RESTRAINING ORDER, SEIZURE
                                         ORDER, EVIDENCE PRESERVATION
20       v.                             AND EXPEDITED DISCOVERY, AND
                                         ORDER TO SHOW CAUSE RE
21 RICHARD SULTANOV and PAUL            PRELIMINARY INJUNCTION**
   OSTLING, individuals,
22
            Defendants.
23

24

25

26

27

28

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

**TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

This matter came before the Court on the *Ex Parte* Application of Plaintiffs OOO Brunswick Rail Management and Brunswick Rail Group Limited (collectively "Brunswick" or "Plaintiff"), seeking relief against Defendants Richard Sultanov ("Sultanov") and Paul Ostling ("Ostling") (collectively "Defendants"), seeking a Temporary Restraining Order, Seizure Order, Order for Evidence Preservation and Expedited Discovery, and Order to Show Cause why a preliminary injunction should not be issued (the "Application").  An *ex parte* hearing was held before this Court on January ___, 2017.  Having considered Plaintiffs' Application, supporting memorandum of points and authorities, supporting declarations and exhibits, Complaint, and other papers and arguments submitted, this Court **GRANTS** the Application as follows:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court hereby makes the following findings of fact and conclusions of law:

### Jurisdiction And Venue

1. This Court has jurisdiction over the subject matter of this case, pursuant to the Defend Trade Secrets Act (18 U.S.C. § 1836) and 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367.  The Court has jurisdiction over all parties hereto and venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims pled occurred in the Northern District of California.  In particular, as set forth further herein, Defendants have transmitted email messages, containing Plaintiffs' trade secrets and confidential information, causing the injury alleged, by means of an email account associated with the company Google, Inc., located within the Northern District of California, in Mountain View, California, and an email account associated with Rackspace Hosting, Inc. and Rackspace US, Inc., with a presence in the Northern District of California.

2. The Complaint states a claim upon which relief may be granted against the Defendants under the Defend Trade Secrets Act (18 U.S.C. § 1836); California Uniform Trade Secrets Act (Cal. Civ. Code § 3426, *et seq*); Breach of Fiduciary Duty and Duty of

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  Loyalty; and Breach of Written Contract and Breach of the Covenant of Good Faith and Fair

2  Dealing (as to Sultanov); Unfair Competition under Cal. Bus. & Prof. Code §§ 17200; and

3  Common Law Misappropriation and Unfair Competition.

**Factual Background**

5      3.      Plaintiffs are in the business of leasing railcars, and have been employers of

6  the Defendants.

7      4.      Defendant Richard Sultanov was hired by Plaintiff OOO Brunswick Rail

8  Management as Director of Strategic Marketing Development and Communications in July

9  2014. He became assistant to the General Director and to the CEO in November 2015.

10 Sultanov entered into an employment and confidentiality agreement in July 2014 that

11 required him "not to disclose to third parties or use without the consent of the Employer, a

12 confidential information or information containing commercial secrets, the access to which

13 was obtained by the Employee during the period of work for the Employer." The agreement

14 further required "[c]ompliance with the requirements of the internal code of conduct...," that

15 Sultanov act with a "[r]esponsible attitude for the property of the Employer," and that he

16 "cherish credibility and the reputation of the Employer." Pursuant to the terms of his

17 employment, Sultanov also agreed to the terms of an IT security policy that prohibited

18 sending confidential, internal information to parties and email addresses outside of

19 Brunswick.

20     5.      Defendant Paul Ostling was hired by Plaintiff Brunswick Rail Group Limited

21 as interim CEO of Brunswick Rail Group Limited, OOO Brunswick Rail Management and

22 the corporate family of which they are a part (the "Group") in September 2015. Prior to that,

23 beginning in June 2012, he was Chairman of the Board of Brunswick. Ostling entered into an

24 employment and confidentiality agreement in February 2016 that "[y]ou shall not except as

25 authorised or required by your duties hereunder use for your own benefit and gain or reveal to

26 any person, firm, company or other organisation whatsoever, any trade secrets or Confidential

27 Information belonging to the Employer or to any other member of the Group or relating to the

28 affairs or dealings of the Group which may come to your knowledge during your

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2      [PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

employment.  You shall treat the same with complete secrecy."  The agreement further required "[i]n your role as CEO, you will use your best endeavors to promote the interests of the Employer and the Group."   Pursuant to the terms of his employment, Ostling also signed a confidentiality policy, and was subject to the terms of an IT policy and security policy, that prohibited sending confidential, internal information to parties and email addresses outside of Brunswick.

6.        Plaintiffs take numerous steps to safeguard their trade secrets and confidential information.  Plaintiffs do not freely share their trade secrets and confidential information with any person or entity outside of Plaintiffs.  Plaintiffs require all employees and consultants to agree to protect the trade secrets and confidential information of Plaintiffs pursuant to employment, confidentiality and IT policies, such as those set forth above, which contain confidentiality, non-disclosure and non-use provisions.  Those provisions define Plaintiffs' trade secrets and confidential information broadly and prohibit employees or consultants from disclosing Plaintiffs' trade secret and confidential information to anyone outside of Plaintiffs, without consent or appropriate authorization.  In this way, Plaintiffs protects and limits access to their trade secrets and confidential information.  The Plaintiffs also protect and limit access to their trade secrets in other ways, including by securing their networks, requiring passwords on computers and accounts, and secured access to their physical facilities, including locking doors and activating alarm systems.  During business hours, members of the public are not allowed in Plaintiffs' facilities unless they have an appointment or are otherwise escorted, with appropriate authorization, by Plaintiffs' employees.  Sensitive documents are kept in secured locations and accounts, which may only be accessed by employees with proper authorization, user IDs and passwords.

7.        Plaintiffs' trade secrets and confidential information, subject to confidentiality restrictions and protections, includes:  board materials, minutes of board meetings, legal counsels' opinions, confidential letters from counsel for certain of the creditors and Plaintiff's responses, internal decision-making and strategy concerning the restructuring and negotiations, internal decision-making and strategy concerning the arbitration with the former

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

1   CEO Alex Genin ("Genin"), Credit Committee materials, Compensation Committee

2   materials, valuation reports by consultants, and internal emails regarding ongoing

3   negotiations with clients.

4        8.       This information derives its value from being secret and held internally at the

5   company.  Plaintiffs have expended time, effort and money to maintain their trade secrets and

6   confidential information necessary to important restructuring negotiations that are critical to

7   the company and its success.  Plaintiffs have invested in and developed strategies to manage

8   their position in the market and their position in relation to creditors.  The development,

9   compilation and management of this information has great value to the company.

10       9.       Plaintiffs are currently facing challenges in the market and are in the process

11  of restructuring their credit facilities.  Plaintiffs are in ongoing, sensitive negotiations with

12  creditors.  Plaintiffs are also engaged in an arbitration of disputes with its former CEO Genin,

13  who was in the role before Defendant Ostling.  Thus, the trade secrets and confidential

14  information relating to these matters are of particular value to the Plaintiffs.  During the

15  course of their employment, Defendants Sultanov and Ostling were involved in internal

16  communications regarding the restructuring negotiations and the arbitration.  Defendants have

17  received trade secret and confidential information concerning those matters.  Such trade

18  secrets and confidential information include materials prepared by the restructuring

19  committee and materials prepared by management for the Board of Directors.

20       10.      In mid-November 2016, Ostling resigned as CEO and the company accepted

21  that resignation on November 13, 2016.  Shortly before Ostling resigned, he asked the

22  company for a special bonus for Sultanov.  The company also discovered that Sultanov had

23  been obtaining approval from Ostling for an inordinate amount of overtime, which

24  accumulated to nearly 40% additional pay over the course of the year.  Given the state of the

25  company and the timing of the bonus request in relation to his departure, this was unusual.

26  Since early November 2016, the General Director of Plaintiff OOO Brunswick Rail Manager

27  observed that Sultanov began exhibiting behavior that was unusually secretive.  Sultanov

28  often would leave the floor where he works, move one floor up, and take and make numerous

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4          [PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  calls. This behavior was out of the ordinary. At that time, Sultanov also came to work on the

2  weekends repeatedly, at a time when he had no reason to be there. At this time, Sultanov

3  began asking numerous and detailed questions regarding the restructuring and negotiations

4  with bondholders, even though he was not working on such matters and they were entirely

5  outside of the job scope. Over this same period of time, and particularly over the last few

6  weeks in December, Plaintiffs began receiving multiple letters from creditors with which they

7  were negotiating, which appeared to be coordinated. In view of the foregoing developments,

8  on December 9, 2016, Plaintiffs exercised their rights consistent with internal IT policy, to

9  which Sultanov had agreed, and accessed his Brunswick email account to investigate.

10       11.    Upon reviewing the email account, Plaintiffs discovered that since November

11  12, 2016, Sultanov had been sending a very large number of trade secret and confidential

12  documents from his work email account to his personal email account

13  (richard.sultanov@gmail.com). These emails contain trade secret and confidential

14  documents. A number of the documents are specifically marked "strictly confidential." This

15  information includes: board materials, minutes of board meetings, legal counsels' opinions,

16  confidential letters from counsel for certain of the creditors and Plaintiff's responses, internal

17  decision-making and strategy concerning the restructuring and negotiations, internal decision-

18  making and strategy concerning the arbitration with Brunswick's former CEO Genin, Credit

19  Committee materials, Compensation Committee materials, valuation reports by consultants,

20  and internal emails regarding ongoing negotiations with clients.

21       12.    Sultanov's sending of these materials to his personal email account was

22  unauthorized and was inconsistent with his confidentiality obligations under his employment

23  agreement and his duties to the company. Sending these materials also violated Plaintiffs'

24  internal IT policy, which Sultanov previously signed. The materials that Sultanov sent to his

25  personal email account were beyond the scope of his duties and there was no legitimate

26  purpose for Sultanov to send the materials to his personal email account. On December 10,

27  2016, Sultanov deleted many of these emails and then took the further step of emptying his

28  deleted items folder in an attempt to remove any evidence that he had sent these materials to

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    his personal email account.  Plaintiffs were able to recover some of these emails.

2          13.    Given the ongoing sensitive negotiations with creditors, Sultanov was

3    instructed not to communicate to creditors or anyone outside of the company who may relate

4    to the ongoing negotiations, without prior approval by his supervisors.  Notwithstanding this

5    direction, Sultanov's phone records from his work telephone indicate that, from December 4-

6    12, 2016, he had multiple calls with Denis Mosolov, a representative of one of the creditors in

7    a position adverse to the company.  Separately, during this same period, on December 6,

8    2016, Plaintiffs received a letter from a different creditor, and on December 7, 2016, received

9    a letter from counsel for a group of creditors, all of which appeared to be coordinated.

10   Sultanov's phone records also indicate that, from December 4-12, 2016, he had multiple calls

11   with Ostling, who was no longer the company's CEO.

12         14.    Given these discoveries, Plaintiffs commenced an internal investigation with

13   the assistance of its outside counsel into whether there might be communications of

14   confidential and price-sensitive information to third parties, particularly, the creditors with

15   whom the company is negotiating.  On December 12, 2016, in the presence of representatives

16   of Plaintiffs' management and outside counsel, Plaintiffs conducted an interview of Sultanov.

17   During the interview Sultanov admitted that he had sent, to his personal account, confidential

18   information that did not pertain to his duties, and was unable to provide a clear explanation

19   for his actions.  Sultanov denied that he had engaged in conversations with Mosolov, the

20   creditor's representative, despite the phone records showing that they spoke twice on

21   December 6, 2016.  When asked to explain the purpose of the calls and specifics of

22   information that he had sent to his private account, Sultanov refused to continue the

23   discussion and left the interview.  Sultanov was asked to return for further discussion, but he

24   has refused to do so and has not returned to the office.

25         15.    Given these actions, Plaintiffs have suspended Sultanov's employment.  He

26   was fully denied access to the office, the company issued mobile phone and laptop in his

27   possession, or his company email account and has been instructed not to communicate with

28   other employees of Plaintiffs without management's approval.  Plaintiffs have repeatedly

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1   requested that Sultanov return his company issued mobile phone and laptop, as he is required

2   to do under his employment agreement, but he continues to refuse to do so.

3       16.     On December 16, by means of a communication from Defendant Ostling to

4   Plaintiffs' counsel in the U.K., Sultanov threatened to make complaints to regulatory

5   authorities unless Plaintiffs dropped their investigation of Sultanov's actions.

6       17.     Plaintiffs' investigation also reveals that, notwithstanding that he resigned

7   from his position of CEO in mid-November, Ostling continued to ask his former secretary to

8   carry out work for him, through her obtained confidential internal information about the

9   Sultanov investigation and suspension, and shared that information with representatives of

10  company creditors.  In particular, on December 13, 2016, Ostling received from his former

11  secretary at the company, to his personal email account (paul.ostling@pauljostling.com),

12  three emails containing the internal notice regarding Sultanov's suspension and internal

13  details regarding that suspension.  On December 14, 2016, Ostling forwarded each of these

14  confidential emails to Mosolov, the representative of one of the creditors with which

15  Plaintiffs are negotiating, and also forwarded these emails to Sultanov.  Ostling copied both

16  of these individuals on the same forwarded emails.  Since Sultanov's suspension, Ostling also

17  called Aaron Ruben, another representative of the same creditor represented by Mosolov, and

18  Dominic Dolenc, one of Plaintiffs' former restructuring consultants.

19      18.     Further, since his suspension, Sultanov has been working and Ostling's new

20  company and assisting him with his investment in that company.  Similarly, it appears that

21  Sultanov has been assisting Ostling with work at that company while employed by Plaintiffs.

22  In particular, Sultanov's company email account continues to receive meeting requests with

23  respect to that company.

24      19.     The foregoing evidence indicates that Sultanov has used and disclosed outside

25  of the company a number of trade secret documents and information that would be of interest

26  to the company's creditors, and others, and has attempted to conceal his communications with

27  the creditors.  Ostling obtained trade secret information about the investigation from his prior

28  secretary and forwarded it to a company creditor, with which Plaintiffs are negotiating.  The

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1   foregoing evidence indicates that creditors have used and are likely to use in the future, trade

2   secrets and confidential information, to gain an unfair advantage in relation to Plaintiffs.

3   There is also a significant risk, given the variety of information forwarded by Sultanov to his

4   personal email concerning other sensitive topics, such as the arbitration with Brunswick's

5   former CEO Genin, that such information would be used by or disclosed to other parties

6   adverse to the company.  This injury is caused by Defendants and cause harm to Plaintiffs.

7   **Legal Standard**

8       20.     The legal standard for a temporary restraining order is the same as a motion

9   for preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d

10   832, 839 n.7 (9th Cir. 2001).  A plaintiff seeking a TRO "must establish that he is likely to

11   succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

12   relief, that the balance of equities tips in his favor, and that an injunction is in the public

13   interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.

14   2009) (quoting *Winter v. Nat. Resources Defense Council*, 555 U.S. 7, 20 (2008)).  To grant

15   preliminary injunctive relief, a court must find that "a certain threshold showing is made on

16   each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).  Provided that this

17   has occurred, in balancing the four factors, "'serious  questions going to the merits' and a

18   balance of hardships that tips sharply towards the plaintiff can support issuance of a

19   preliminary injunction, so long as the plaintiff also shows that there is a likelihood of

20   irreparable injury and that the injunction is in the public interest." *Alliance for the Wild*

21   *Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In addition, a movant seeking

22   issuance of an *ex parte* TRO must satisfy Federal Rule of Civil Procedure 65(b), which

23   requires a showing "that immediate and irreparable injury, loss, or damage will result to the

24   movant before the adverse party can be heard in opposition" and certification of "efforts

25   made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

26       21.     The legal standard for a seizure order against the Defendants under 18 U.S.C.

27   § 1836(b) requires that that a Rule 65 order or other form of equitable relief would be

28   inadequate to achieve the purpose of the relief, because the party subject to such order would

8   [PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    evade, avoid or otherwise not comply with such an order, immediate irreparable injury will

2    occur if the seizure is not ordered and harm to the applicant of denying the application

3    outweighs the harm to the legitimate interests of the Defendant of granting the application,

4    and substantially outweighs the harm to any third parties who may be harmed by such

5    seizure. 18 U.S.C. § 1836(b)(2)(A)(ii)(I)-(III). The applicant must demonstrate that it is

6    likely to succeed in showing that the information is a trade secret, and the Defendants against

7    whom seizure would be ordered misappropriated the trade secret by improper means, or

8    conspired to use improper means to misappropriate the trade secret, and that they have actual

9    possession of the trade secret and any property to be seized. 18 U.S.C. §

10    1836(b)(2)(ii)(A)(IV)-(V). The applicant must describe with reasonable particularity the

11    matter to be seized and its location, show that Defendants would destroy, move, hide, or

12    otherwise make inaccessible to the Court if the matter proceeded on notice, and show that the

13    applicant has not publicized the request. 18 U.S.C. § 1836(b)(2)(A)(ii)(VI)-(VIII).

14        22.    Federal trial courts have the inherent authority to make appropriate evidentiary

15    rulings and to prevent destruction or spoliation of relevant evidence. *See Glover v. BIC*

16    *Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). "Federal courts have the implied or inherent power

17    to issue preservation orders as part of their general authority 'to manage their own affairs so

18    as to achieve the orderly and expeditious disposition of cases.'" *Artec Grp., Inc. v. Klimov*,

19    No. 15-cv-03449-RMW, 2016 U.S. Dist. LEXIS 114202, at *4 (N.D. Cal. Aug. 25, 2016)

20    (*quoting Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135 (2004)). Federal courts

21    have the implied or inherent power to issue preservation orders as part of their general

22    authority "'to manage their own affairs so as to achieve the orderly and expeditious

23    disposition of cases.'" *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135-36 (2004)

24    (*quoting Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). "[C]ourts have held that

25    they have the inherent power to order that evidence be preserved and have, for good cause,

26    required that specific procedures be adopted to ensure such preservation." *Pueblo*, 60 Fed.

27    Cl. at 135. In particular, pursuant to the All Writs Act, discussed below, courts have authority

28    to direct third party online service and cloud providers can be ordered to carry out acts in

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  furtherance of preservation orders. *See Bright Sols. for Dyslexia, Inc. v. Doe*, No. 15-cv-

2  018618-JSC, 2015 U.S. Dist. LEXIS 117252, at *5-9 (N.D. Cal. Sept. 1, 2015) (where there

3  is a risk that relevant information will be destroyed, granting preservation order and directing

4  third parties eBay, PayPal, and Google to preserve digital account information pertaining to

5  activities of defendants). Further, Federal courts are empowered to grant a seizure order

6  preserving evidence and assets pursuant to their inherent power and Fed. R. Civ. P. 64 and 65.

7  *See Reebok Int'l Ltd. v. Marnatech Enters. Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (Federal

8  course may order seizures under their inherent authority as they have "the power to issue a

9  preliminary injunction in order to prevent a defendant from dissipating assets in order to

10  preserve the possibility of equitable remedies."); *see also Future Motion, Inc. v. Changzhou*

11  *First Int'l Trade Co.*, No. 2:16-cv-00013-MMD-CWH, Dkt. No. 11 (D. Nv. Jan. 6, 2016)

12  (ordering seizure of evidence of intellectual property theft, with the assistance of the U.S.

13  Marshals Service, pursuant to Rule 65 and inherent authority)

14      23.    The All Writs Act provides that:

15      The Supreme Court and all courts established by Act of Congress may issue all
        writs necessary or appropriate in aid of their respective jurisdictions and agreeable
16      to the usages and principles of law.

17  28 U.S.C. § 1651(a). The Supreme Court has recognized that tailored direction to third-parties

18  that is necessary to effect the implementation of a court order is authorized by the All Writs Act:

19      The power conferred by the Act extends, under appropriate circumstances, to
        persons who, though not parties to the original action or engaged in wrongdoing,
20      are in a position to frustrate the implementation of a court order or the proper
        administration of justice, and encompasses even those who have not taken any
21      affirmative action to hinder justice.

22  *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (citations omitted) (order to

23  telephone company to assist in implementation of a pen register warrant was authorized under

24  the All Writs Act);   *See also In re Application of United States for an Order Authorizing An In-*

25  *Progress Trace of Wire* 616 F.2d 1122, 1129 (9th Cir. 1980) (same; noting of *New York*

26  *Telephone*, "the Court made the commonsense observation that, without the participation of the

27  telephone company, 'there is no conceivable way in which the surveillance authorized could

28  have been successfully accomplished.'"); *In re Baldwin-United Corp.*, 770 F.2d 328, 338-339

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    (2d Cir. 1985) ("An important feature of the All-Writs Act is its grant of authority to enjoin and

2    bind non-parties to an action when needed to preserve the court's ability to reach or enforce its

3    decision in a case over which it has proper jurisdiction"; "We do not believe that Rule 65 was

4    intended to impose such a limit on the court's authority provided by the All-Writs Act to protect

5    its ability to render a binding judgment."); *United States v. Hall*, 472 F.2d 261, 265 (5th Cir.

6    1972) (upholding a contempt citation based on an injunction enjoining a non-party in a school

7    desegregation case from causing disruption on the school campus because the "integrity of [the]

8    court's power to render a binding judgment in a case over which it has jurisdiction [was] at

9    stake"); *Dell Inc. v. BelgiumDomains, LLC*, No. 07-22674, 2007 U.S. Dist. LEXIS 98676 (S.D.

10   Fla. Nov. 20, 2007) (All Writs Act applied in conjunction with trademark seizure under Rule 65

11   and Lanham Act).

## Discussion

13   24.    Plaintiffs first request a limited seizure order against the Defendants, pursuant

14   to the Defend Trade Secrets Act, as well as an evidence preservation order against

15   Defendants, including seizure of the evidence with the assistance of the U.S. Marshals

16   Service, under Fed. R. Civ. P. 64 and 65(b), and the Court's inherent authority to preserve

17   evidence.   Plaintiffs further request, in the aid of the Court's jurisdiction concerning such

18   orders, an order under the All Writs Act (28 U.S.C. § 1651(a)), directing third parties Google,

19   Inc., Rackspace Hosting, Inc. and Rackspace US, Inc., to provide copies of the contents of

20   email accounts:  richard.sultanov@gmail.com and paul.ostling@pauljostling.com, and the

21   digital contents, files and documents in any associated cloud account or service, including any

22   archived, deleted or backups to the custody of the Court.

23   25.    Pursuant to the terms of 18 U.S.C. § 1836(B), (D) and (E) and the Court's

24   inherent authority, Plaintiffs request that the U.S. Marshals Service assist in serving the order

25   on the agents for service of process of the relevant third parties, and that the U.S. Marshals

26   Service shall receive from those third parties any storage medium containing the material to

27   be seized, and will turn that material over to the custody of the Court pending further hearing

28   on the matter.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

26.     Plaintiffs request a TRO that prevents Defendants from accessing, using, disclosing, or making available any of Plaintiffs' trade secrets and confidential information, from violating any agreements with Plaintiffs, from communicating with creditors of Plaintiffs or communicating any trade secret or confidential information or taking any other act to injure the Plaintiffs or their intellectual property.

27.     Plaintiffs request expedited discovery of the contents of the seized accounts, after the hearing on the seizure, and an order to show cause why a preliminary injunction should not issue.

## Likelihood of Irreparable Injury

28.     Plaintiffs contend and have shown evidence that there is a likelihood of irreparable injury by virtue of Defendants' use and dissemination of trade secret and confidential information.   The information that Sultanov sent to his personal email account contains a wide variety of confidential information that would be of interest to numerous parties, including the creditors involved in the Brunswick restructuring, former CEO Genin who is adverse to the company in the arbitration, and commercial information that would be of interest to competitors.  Given the nature of the information that Sultanov sent to his personal account, there is a severe and immediate risk that such information will be shared with creditors, Brunswick's former CEO Genin in the arbitration, competitors or others.  If this trade secrets and confidential information, including internal strategy and information about the restructuring and the arbitration, is shared with creditors, there is a high likelihood that it will disrupt and cause the failure of the negotiations.  The restructuring issues that Brunswick is negotiating with creditors are critical to the company's ability to maintain its business.  Sultanov's actions create a severe and immediate risk of disadvantaging Brunswick by frustrating its ability to negotiate a fair and reasonable restructuring with its creditors, by disclosing its internal strategies.  There is a severe and immediate risk that creditors who obtain this information from Sultanov will use it to gain an unfair advantage during the Brunswick restructuring.  Such disclosure would also create a severe and immediate risk of advantaging some creditors over others, and unfairly advantaging parties associated or

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12          [PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    affiliated with such creditors.  There is also a serious risk that these actions by Sultanov might

2    be inconsistent with the requirements of securities regulations and laws in the jurisdictions in

3    which the company's securities are trading, depending on the timing of the disclosure of the

4    information at issue, as it may be considered to include price-sensitive information.  Further,

5    given that confidential customer and strategy information was included in the conduct, there

6    is a severe risk of unfair competition as well, if competitors were to receive this data.   There

7    is also a severe and immediate risk of interference with the Brunswick arbitration.  For

8    example, there is no reason that Sultanov should have forwarded such information to himself.

9    If he were to share that information with Brunswick's former CEO Genin or his counsel, who

10   are adverse in the arbitration, this would be extremely damaging to Brunswick.

11          29.     Similarly, the information that Ostling received at his personal email account

12   from his former secretary is sensitive internal employment information and was, in fact,

13   forwarded by Ostling to a creditor who is a contractual counterparty in the restructuring.

14   Given the sensitivity of the existing restructuring negotiations, the fact that Ostling has

15   received and forwarded confidential internal employment information to creditors indicates a

16   severe and immediate risk regarding the restructuring process and relations similar to those

17   described above.

18          30.     Plaintiffs allege and have shown evidence that unless they are able to preserve

19   evidence of the scope of the use and disclosure and ultimately to discover those facts, it will

20   be impossible to mitigate the injury and contain the dissemination of sensitive information

21   that has occurred to these contractual counterparties.  It is only in this way that Plaintiffs will

22   be able to prevent the propagation and dissemination of the trade secrets that are the subject

23   of the action, and extraordinary circumstances justify such relief.  Given the evidence of

24   dissemination of trade secrets, evasion, destruction of evidence and attempted destruction of

25   evidence, Plaintiffs have demonstrated that another form of equitable relief would be

26   inadequate to achieve the purpose because there is a risk of evasion, avoidance or

27   noncompliance with such order.   If the Plaintiffs are unable to preserve the evidence, it will

28   be impossible to mitigate the injury caused to the restructuring negotiations.  There is severe

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13          [PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  and immediate risk to the company's ability to maintain its business. There is a high

2  likelihood of irreparable injury.

3       31.    Plaintiffs allege and have shown evidence that unless Defendants are enjoined

4  from further use and dissemination of Plaintiffs' trade secrets and confidential information, it

5  will be impossible to mitigate and contain this injury. If the use and disclosure continues and

6  Plaintiffs are unable to mitigate the injury caused to the restructuring negotiations, there is

7  severe and immediate risk to the company's ability to maintain its business. There is a high

8  likelihood of irreparable injury.

9       32.    Confidential information such internal strategic communications and business

10  decision making, negotiating strategies, valuations and business strategies, and client needs,

11  preference and ongoing negotiations, such as information transmitted here, constitute trade

12  secrets. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (customer

13  information such as sales history and customer needs and preferences constitute trade

14  secrets). Likewise, confidential board materials, minutes of board meetings, committee

15  materials, and legal counsels' opinions constitute trade secrets.

16       33.    Long term injury to the ability of a company to maintain its business, and

17  injury to negotiating position and goodwill with business partners constitutes irreparable

18  harm. *See Stuhlbarg Int'l Sales,* 240 F.3d at 841 (citation omitted) ("Evidence of threatened

19  loss of prospective customers or goodwill certainly supports a finding of the possibility of

20  irreparable harm."). Here, Plaintiffs have shown that there is a likelihood that they will have

21  serious impairment of their ability to negotiate a restructuring of their credit facilities and

22  there is damage to relationships with these business partners, contractual counterparties, as

23  well as ultimately to relations with clients. These harms would likely be irreparable. *See e.g.,*

24  *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) (irreparable

25  harm exists when there is "a threatened imminent loss that will be very difficult to quantify at

26  trial."). In addition, it appears that such loss may occur before Defendants may be heard in

27  opposition, as Plaintiffs have alleged that Defendants have already used the trade secrets and

28  confidential information by sharing such information to their personal email accounts, sharing

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER, EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1   some of the information with creditors and by having numerous unauthorized

2   communications with the creditors. Sultanov has attempted to destroy and withhold evidence

3   in this regard, and Ostling continued to engage his former secretary and received confidential

4   information from her, without informing the company. Accordingly, Plaintiffs have

5   demonstrated a likelihood of irreparable harm.

6       34.     Further, pursuant to Rule 65, the All Writs Act, and the Court's inherent

7   authority, Plaintiffs have demonstrated that unless third parties Google, Inc., Rackspace

8   Hosting, Inc. and/or Rackspace US, Inc. are directed to make and provide into the custody of

9   the court copies of the material at issue, irreparable harm is likely to result to Plaintiffs' from

10  the risk of destruction of evidence, attempted evasion of the Court's jurisdiction, and resultant

11  impairment of Plaintiffs' ability to promptly mitigate the injury caused by Defendants'

12  disclosure and use of trade secrets. Accordingly, narrowly tailored directions are necessary to

13  prevent frustration or thwarting implementation of the Court's orders to the Defendants.

14  Here, the third-parties control the infrastructure containing the trade secret material at issue

15  and are in a position to reduce the risk of frustration of implementation of the order. Without

16  their reasonable assistance, there is no way in which the relief, directed at Defendants' acts

17  and property, can be ensured to be successfully effected. Thus, the reasonable assistance of

18  the third parties in preparing copies of the material at issue and providing that into the

19  custody of the Court, to prevent irreparable harm, to aid in the Court's exercise of its

20  jurisdiction and to preserve critical evidence, is necessary and appropriate. Such direction to

21  third parties is consistent with Due Process. *See e.g. Mathews v. Eldridge*, 424 U.S. 319

22  (1976) (prior notice and hearing are not always required to satisfy due process; evidentiary

23  hearing held after withholding of social security benefits satisfied due process); *Goichman v.*

24  *Rheuban Motors, Inc.* 682 F.2d 1320 (9th Cir. 1982) (hearing held shortly after car was towed

25  satisfied due process). Here, requiring the third-parties to provide minimal assistance in

26  executing the order would not violate due process. The third-parties are not being deprived of

27  any tangible or significant property interest. The Proposed Order requires only minimal

28  assistance from the third-parties (likely on the order of hours), and requires Plaintiffs to

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15     [PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  compensate the third-parties for the assistance rendered.  Further, this order requires that its

2  terms be implemented with the least degree of interference with the normal operation of the

3  third-parties.  In the absence of such third-party assistance, there is a serious risk of

4  irreparable harm to Plaintiffs.

5  **Likelihood of Success on the Merits**

6       35.     Plaintiffs have brought claims under DTSA, CUTSA, breach of fiduciary duty

7  and duty of loyalty and breach of contract.  Plaintiffs contend and have shown evidence that

8  Defendants have used improper means to obtain, use and disseminate their protected

9  information, as defined by both the DTSA and CUTSA.  *See* 18 U.S.C. § 1839(6) (defining

10  "improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of a

11  duty to maintain secrecy, or espionage through electronic or other means."); Cal. Civ. Code §

12  3426.1(a) (defining "improper means" as "theft, bribery, misrepresentation, breach or

13  inducement of a breach of a duty to maintain secrecy, or espionage through electronic or

14  other means.").

15       36.     Plaintiffs have alleged and shown evidence that Defendants emailed and

16  downloaded to their personal email accounts and computers, including directly and through

17  other company employees, trade secrets and confidential information from Plaintiffs both

18  before and after leaving their employment.  Plaintiffs have alleged and shown evidence

19  creating a reasonable inference that Defendants are gathering such information to benefit

20  contractual counterparties, the creditors, outside of the company and potentially other parties

21  such as the adverse party to the pending arbitration or competitors.  Plaintiffs have alleged

22  and shown evidence of an attempt to obtain further trade secret information from the

23  company, direct communications of such data to contractual counterparties in breach of

24  Defendants' employment and confidentiality agreements, IT policies, and fiduciary duties,

25  and attempts to conceal the truth about such communications and disclosures and attempts to

26  destroy evidence of these activities.  In light of these contentions and the evidence shown, the

27  Court concludes that Plaintiffs are likely to succeed on the merits.

28  **Balance of Hardships**

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

37.     Plaintiffs contend that they have suffered and will continue to suffer irreparable harm if Defendants are allowed to continue to injure Plaintiffs restructuring activities and able to conceal evidence of the full scope of that harm, thus preventing Plaintiffs from understanding the full scope and promptly taking steps to mitigate the irreparable injury.  By contrast, Defendants will suffer no undue hardship because they will not be prohibited from engaging in any activity that is proper.  Notably, Plaintiffs have not requested that Defendants be prohibited from any activity beyond what is already prohibited under the provisions of their employment and confidentiality obligations, and pursuant to their fiduciary duties and duties of loyalty.

38.     Further, the requested seizure of copies of the email accounts used to carry out the misappropriation and injury is tailored to require simply the preservation of the evidence, with the assistance of the third party email providers.  There will be no undue burden on the third parties, as the requested step of creating a copy of the accounts is consonant with normal backup activities, and Plaintiffs will cover reasonable costs to copy these accounts onto a storage medium.  The evidence will then be delivered directly to the U.S. Marshals Service, and delivered into the custody of the Court to be held pending further proceedings after notice to the Defendants.  There is no access of the data by any party until further proceedings occur.  Plaintiffs have requested expedited discovery into the contents of the email accounts, to occur after the hearing on the seizure to preserve evidence, which is directed to occur within seven days of this Order, unless the parties consent to another date.  At that hearing, the Court will hear the parties' arguments regarding whether there is good cause for expedited discovery in order to enable Plaintiffs to effectively mitigate the injury caused by Defendants and as such discovery relates to ultimate issuance of a preliminary injunction.  "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice of the responding party."  *Grooms v. Legge*, No. 09cv489-IEG-POR, 2009 WL 704644, at *12 (S.D. Cal. Mar. 17, 2009)

39.     Thus, the requested TRO and seizure order do not impose any hardship or prejudice on Defendants.  Accordingly, the Court concludes that the balance of equities tips

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17                [PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  in favor of granting the TRO. *See Dish Network LLC v. Ramirez*, No. 15-cv-04712-BLF,

2  2016 WL 3092184, at *7 (N.D. Cal. June 2, 2016) (balance of hardships tips in favor of

3  plaintiff seeking injunction when it would "do no more than require Defendant to comply

4  with federal and state ... laws" (citation omitted)).

5  **Public Interest**

6  40.  Similarly, the public interest is served when defendant is asked to do no more

7  than abide by trade laws and the obligations of contractual agreements signed with her

8  employer, and to refrain from destroying evidence of misconduct.  Public interest is also

9  served by enabling the protection of trade secrets. *Bank of Am., N.A. v. Lee*, No. CV 08-5546

10  CAS (JWJx), 2008 WL 4351348, at *7 (C.D. Cal. Sept. 22, 2008).

11  41.  Accordingly, the Court concludes that all four factors for a TRO and seizure

12  order have been met and will grant the requested TRO prohibiting  Defendants from

13  accessing, using or disclosing Plaintiffs' information and from interfering with negotiations

14  with contractual counterparties, and will grant the limited seizure order directing that copies

15  of the relevant accounts be made by the third party service providers, delivered to the U.S.

16  Marshals service, which will then deliver them into the custody of the Court pending further

17  proceedings.  Plaintiffs argue that no bond should be required because the TRO will not cause

18  any damage to Defendants' legitimate business or interests, or impose any hardship, and

19  further because they agreed in their employment and confidentiality agreements to adhere to

20  the relief requested.

21  **TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER**

22  **IT IS HEREBY ORDERED THAT**

23  A.  Pursuant to 18 U.S.C. §§ 1836(A), (B), a trade secrets seizure order is directed

24  against the Defendants. Defendants are directed to submit to and consent to the seizure of:  (1)

25  contents of the email account: richard.sultanov@gmail.com, and the digital contents, files and

26  documents in any associated Google cloud account or service (including but not limited to

27  Google Docs), and including any archives, deleted emails or items or backups of the foregoing

28  material, and (2) contents of the email account: paul.ostling@pauljostling.com, and the digital

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    contents, files and documents in any associated Rackspace cloud account or service, and

2    including any archives, deleted emails or items or backups of the foregoing material. Defendant

3    Sultanov is further directed to make available to the U.S. Marshals Service and submit to and

4    consent to the seizure of the mobile telephone and laptop issued by Plaintiffs to him as part of his

5    employment, and any contents thereon.

6          B.      Pursuant to Fed. R. Civ. P. 64 and 65, and the Court's inherent authority, an

7    evidence preservation and evidence seizure order is directed against Defendants. Defendants are

8    directed to submit to and consent to the seizure of:  (1) contents of the email account:

9    richard.sultanov@gmail.com, and the digital contents, files and documents in any associated

10    Google cloud account or service (including but not limited to Google Docs), and including any

11    archives, deleted emails or items or backups of the foregoing material, and (2) contents of the

12    email account: paul.ostling@pauljostling.com, and the digital contents, files and documents in

13    any associated Rackspace cloud account or service, and including any archives, deleted emails or

14    items or backups of the foregoing material. Defendant Sultanov is further directed to make

15    available to the U.S. Marshals Service and submit to and consent to the seizure of the mobile

16    telephone and laptop issued by Plaintiffs to him as part of his employment, and any contents

17    thereon.

18          C.      Pursuant to the All Writs Act (28 U.S.C. § 1651(a)), in the aid of the Court's

19    jurisdiction concerning the foregoing orders, third-party Google, Inc. shall make a copy, onto a

20    physical storage medium, of the entirety of the contents of the email account:

21    richard.sultanov@gmail.com, and the digital contents, files and documents in any associated

22    Google cloud account or service (including but not limited to Google Docs), and including any

23    archives, deleted emails or items or backups of the foregoing material,  and (1) shall deliver that

24    physical storage medium to the United States Marshals Service for the Northern District of

25    California, or (2) alternatively, upon conference between Plaintiffs, the foregoing third-parties

26    and the United States Marshals Service, shall preserve and retain such materials in the temporary

27    custody of Google, Inc., pending  further hearing on the ultimate disposition of the materials, as

28    set forth below.  Google, Inc. shall also refrain from providing any notice or warning to, or

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1   communicating in any way with Defendants or Defendants' representatives and refrain from

2   publicizing this Order until this Order is executed in full.

3       D.      Pursuant to the All Writs Act (28 U.S.C. § 1651(a)), in the aid of the Court's

4   jurisdiction concerning the foregoing orders, third-parties Rackspace Hosting, Inc. and/or

5   Rackspace US, Inc. shall make a copy, onto a physical storage medium, of the entirety of the

6   contents of the email account: paul.ostling@pauljostling.com, and the digital contents, files and

7   documents in any associated Rackspace cloud account or service, and including any archives,

8   deleted emails or items or backups of the foregoing material, and (1) shall deliver that physical

9   storage medium to the United States Marshals Service for the Northern District of California, or

10  (2) alternatively, upon conference between Plaintiffs, the foregoing third-parties and the United

11  States Marshals Service, shall preserve and retain such materials in the temporary custody of

12  Rackspace Hosting, Inc. and Rackspace US, Inc., pending  further hearing on the ultimate

13  disposition of the materials, as set forth below.  Rackspace Hosting, Inc. and/or Rackspace US,

14  Inc. shall also refrain from providing any notice or warning to, or communicating in any way with

15  Defendants or Defendants' representatives and refrain from publicizing this Order until this Order

16  is executed in full.

17      E.      The United States Marshals Service in the Northern District of California is

18  directed to coordinate with Plaintiffs and their attorneys, with third parties Google, Inc.,

19  Rackspace Hosting, Inc. and Rackspace US, Inc., and with the United States Marshals Service in

20  any other venue necessary to carry out this Order, to seize and preserve evidence of copies of the

21  foregoing materials, and to (1) place them on physical storage media, which can be transferred to

22  the custody of the Court, or (2) alternatively, upon conference between Plaintiffs, the foregoing

23  third-parties and the United States Marshals Service, to coordinate the preservation and retention

24  of such materials in the temporary custody of Google, Inc., Rackspace Hosting, Inc. and

25  Rackspace US, Inc., pending  further hearing on the ultimate disposition of the materials, as set

26  forth below.  In order to facilitate such coordination, the contact information for the United States

27  Marshals Service in the Northern District of California is set forth, as follows:

28                          Northern District of California (N/CA)

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20              [PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
                EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
                ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1                    U.S. Marshal: Donald M. O'Keefe
U.S. Courthouse/Phillip Burton Building
2                    450 Golden Gate Avenue, Room 20-6888
3                    San Francisco, CA 94102
(415) 436-7677

4       F.      The seizure and evidence preservation shall take place within 48 hours of the

date of this Order.  The seizure shall be made by the United States Marshals Service, in

coordination with the Plaintiffs, their counsel and the third-parties, during the normal

business hours of Google, Inc., Rackspace Hosting, Inc. and Rackspace US, Inc. and in a

manner that minimizes interruption of their business operations and does not interrupt

legitimate business operations of the Defendants.  The United States Marshals accomplishing

such seizure are permitted to communicate with representatives of Google, Inc., Rackspace

Hosting, Inc., Rackspace US, Inc. and the Plaintiffs, and to the extent necessary, to enter the

premises of Google, Inc., Rackspace Hosting, Inc. and Rackspace US, Inc., to serve copies of

this Order, confer with the foregoing third parties and Plaintiffs, carry out the terms of this

Order and to verify compliance with this Order.  The United States Marshals shall employ

whatever reasonable means are necessary to carry out the terms of this Order and to work

with Google, Inc., Rackspace Hosting, Inc., Rackspace US, Inc. and the Plaintiffs to (1)

obtain copies of the foregoing materials on physical storage media, which can be transferred

to the custody of the Court, or (2) alternatively, upon conference between Plaintiffs, the

foregoing third-parties and the United States Marshals Service, preserve and retain such

materials in the temporary custody of Google, Inc., Rackspace Hosting, Inc. and Rackspace

US, Inc., pending  further hearing on the ultimate disposition of the materials, as set forth

below.

       G.      The United States Marshals Service in the Northern District of California, in

coordination with the Plaintiffs and their attorneys, shall facilitate service of copies of this

Order by delivery to the registered California agents for service of process for Google, Inc.,

Rackspace Hosting, Inc. and Rackspace US, Inc., with email copies to their inhouse legal

departments and/or subpoena and Court order compliance departments.

       H.      The seized physical storage media and the materials contained on such media,

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21      [PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    whether held in the custody of the Court or held by the third-parties pursuant to this Order of

2    the Court, shall not be accessed by Plaintiffs or Defendants, and shall not be further copied in

3    whole or in part, and any such separate physical media shall not be connected to a network or

4    the Internet without the consent of both parties, until the Plaintiffs and Defendants have had

5    an opportunity to be heard in Court at the seizure hearing ordered herein.

6          I.      If upon conference between the third-parties, Plaintiffs and the United States

7    Marshals Service, it is determined that the materials shall be placed on a physical storage

8    medium to be delivered to the Court, the United States Marshals Service shall take possession

9    of such physical media, deliver it into the custody of the Court, and is directed to coordinate

10   with the undersigned U.S. District Judge to do so.  If upon conference between the third-

11   parties, Plaintiffs and the United States Marshals Service it is determined that the materials

12   seized and preserved herein shall be held in temporary custody of the third-parties pursuant to

13   the Court's direction, the United States Marshals Service shall coordinate with the third-

14   parties and Plaintiffs to ensure such preservation of evidence.

15         J.      With respect to seizure of the mobile telephone and laptop issued by Plaintiffs

16   to Defendant Sultanov, the United States Marshals Service in the Northern District of

17   California, shall take the mobile telephone and laptop into its custody from Defendant

18   Sultanov, upon his appearance in the United States District Court for the Northern District of

19   California.  Plaintiffs and their attorneys shall inform the United States Marshals Service of

20   the date or dates when Sultanov will be present in the courthouse.

21         K.      The Plaintiffs shall take reasonable steps not publicize this order or the seizure

22   carried out under this order in public media beyond the filing of materials on the Court's

23   docket and notice and service of process upon Defendants.

24         **IT IS HEREBY ORDERED THAT DEFENDANTS RICHARD SULTANOV AND**

25   **PAUL OSTLING** appear before this Court on January ___, 2017 at _:___ _.m, or as soon thereafter

26   as the matter may be heard, in Courtroom ___ of the above-entitled court located at 450 Golden

27   Gate Avenue, San Francisco, CA 94102, pursuant to 18 U.S.C. § 1836(F), Fed. R. Civ. P. 64 and

28   65(b) and the Court's inherent authority, for a hearing regarding continuance of the seizure of

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22        [PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

copies of evidence that is ordered herein, and on Plaintiff's motion for expedited discovery. If the parties consent to a different date and time for this seizure hearing, they shall promptly jointly file a request with the Court to schedule an alternative date and time.

**IT IS HEREBY FURTHER ORDERED THAT DEFENDANTS RICHARD SULTANOV AND PAUL OSTLING** appear before this Court on January __, 2017 at __:__ _.m., or as soon thereafter as the matter may be heard, in Courtroom __ of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, CA 94102, then and there to show cause, if any there be, why a preliminary injunction should not be made and entered, pursuant to Federal Rule of Civil Procedure 65 for the following, and that pending the foregoing hearing and ruling on Plaintiffs' request for preliminary injunction, the Court hereby issues this Order:

1. restraining and enjoining Defendants, and all those acting in concert or participation with them from destroying, or disposing any evidence or other materials, in any form, relating to this action and the issues raised herein, including, without limitation, all devices, electronic media, cloud storage, telephones and all copies of any and all documents, media and/or other materials, containing, identifying, describing, reflecting or referencing Plaintiffs' confidential, proprietary, or trade secret information, and any and all documents, data and information which was obtained by Defendants from, or by virtue of their employment with Plaintiffs, including all current or archived media, emails, chats, texts, documents, electronic logs, metadata, storage, directories, telephone logs, telephones, computer, laptops, software or hardware.

2. restraining and enjoining Defendants, and all those acting in concert or participation with them, from violating their employment agreements, confidentiality agreements, IT policies, or fiduciary duties, duties of loyalty and other obligations to Plaintiffs, including without limitation the portions of their agreements prohibiting the use, disclosure or dissemination of Plaintiffs' confidential, proprietary or trade secret information, and their fiduciary duties and duties of loyalty not to use, disclose or disseminate such information.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23   [PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1      3.      restraining and enjoining Defendants, and all those acting in concert or

2              participation with them, from communicating confidential, proprietary or trade

3              secret information to contractual counterparties of Plaintiffs, including any

4              creditors or related parties, or otherwise interfering with or injuring relations,

5              goodwill or negotiations with any contractual counterparties, including creditors or

6              related parties, or communicating regarding Plaintiffs' business or dealings with

7              such parties,

8      4.      directing Defendants, and all those acting in concert or participation with them, to

9              deliver immediately to Plaintiffs, all copies of all documents, materials and other

10             media or devices or telephones, whether in paper form or in an electronic medium,

11             or hardware or software, containing Plaintiffs' confidential, proprietary or trade

12             secret information that Defendants possess or have in their custody or control.

13     5.      directing Defendant Sultanov to bring to the United States District Court for the

14             Northern District of California and to make available and provide to the U.S.

15             Marshals Service the telephone issued by Plaintiffs to Sultanov as part of his

16             employment, and any contents thereon.

17         If the parties consent to a different date and time for the show cause and preliminary

18     injunction hearing, they shall promptly jointly file a request with the Court to schedule an

19     alternative date and time.

20         **IT IS FURTHER ORDERED** that copies of this Order, notice of the seizure hearing

21     and the Preliminary Injunction hearing and service of the Complaint may be served by any

22     means authorized by law, including (1) by personal delivery upon Defendants, and (2) by

23     transmission by e-mail, facsimile and/or mail to the Defendants.

24         **IT IS SO ORDERED**

25         DATED this ___ day of January 2017.

26

27         _____

28         UNITED STATES DISTRICT JUDGE

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

[PROPOSED] ORDER GRANTING TRO, SEIZURE ORDER,
EVIDENCE PRESERVATION, EXPEDITED DISCOVERY AND
ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION